**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 04a0045n.06**
**Filed: October 28, 2004**

**Case No. 01-5050**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ADAM BARNETT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| MEMPHIS CITY SCHOOLS, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: KENNEDY, SUHRHEINRICH and BATCHELDER, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Terry and Janeene Barnett, on behalf of their son, Adam Barnett, appeal the district court's order affirming the administrative law judge's ("ALJ") denial of their claim for compensatory education pursuant to the Individual's with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et seq.* Adam Barnett was born prematurely on April 17, 1979, with cerebral palsy, no hands, and only one foot. He has low average intelligence and learning disabilities in reading and mathematics. Adam uses a wheelchair and requires assistance when eating, dressing, and bathing. He attended Memphis City Schools, specifically the Shrine School, from ages six to twenty-one, before graduating in Spring 2000 with a special education diploma.

On behalf of Adam, his parents requested a hearing before a state-appointed ALJ in August 1999. They asserted that the Memphis City Schools failed to provide Adam with a free appropriate public education ("FAPE") as required under the IDEA. On February 29, 2000, the ALJ concluded

that the Shrine School had provided Adam with the requisite FAPE, and held in favor of the Memphis City Schools. Barnett's parents then challenged that decision in the United States District Court for the Western District of Tennessee. The district court affirmed the decision of the ALJ. The court concluded that the school system committed procedural violations of the IDEA by failing to relay information contained in a psychological evaluation and a "vocational rehabilitation assessment" to Adam's parents, but nevertheless held that these procedural violations do not preclude the ALJ's decision that Adam received a FAPE, and therefore denied plaintiffs' claim for compensatory education. Plaintiffs appealed to this Court.

After carefully reviewing the parties' briefs and the record, and considering additional claims made at oral argument, we concluded that we were not in a position to determine whether, as a jurisdictional question, the case was moot. We noted that Adam is no longer attending the Shrine School, and we therefore vacated the district court's holding and remanded for the sole purpose of determining whether Adam's removal from the Memphis City Schools makes this case moot.

Pursuant to our remand, the district court held an evidentiary hearing, in which Adam testified under oath that he had requested compensatory education but had been denied it. Adam described his reasons for leaving the Shrine School, including harassment from school staff as a result of his bringing a prior personal injury suit, as well as witnessing the harassment and assault of other disabled students, and generally not feeling safe and comfortable in the school environment. He acknowledged that he had received a special education diploma and testified that he would like further assistance with reading, math, and computer skills. He receives instruction once per week at the Mid-South Assistive Technology Center and is willing to take a variety of courses more frequently, but cannot due to lack of funds. Following the evidentiary hearing, the district court held

2

that plaintiffs' request for compensatory education is not moot, despite his age.[1] According to the district court, "[a] proper request for compensatory education presents no issue of mootness, since the reviewing court investigates [and compensates for] past violations."

Because the district court found that the case is not moot, plaintiffs once again appeal the district court's initial decision affirming the judgment of the ALJ. The defendant Memphis City Schools contends that the district court erred in finding that plaintiffs' claim for compensatory education is not moot, and argues that if we hold otherwise we should nonetheless affirm the district court's and ALJ's earlier denial of plaintiffs' claims under the IDEA.

## I.

The district court did not err in holding that plaintiffs' claim for compensatory education is not moot. Plaintiffs claim that the Memphis City Schools must pay for educational services because the school system illegally denied Adam Barnett a FAPE when he was under age twenty-one. Compensatory education is a judicially-constructed form of relief designed to remedy past educational failings for students who are no longer enrolled in public school due to their age or graduation. *See Pihl v. Massachusetts Dept. of Educ.*, 9 F.3d 184, 189 (1st Cir. 1993). Plaintiffs in this case have asked the court to investigate past violations and to compensate for the denial of a FAPE with present educational services.

The district court relied on *Sch. Comm. of the Town of Burlington v. Dept. of Educ.*, 471 U.S. 359 (1985), in which the Supreme Court held that a school district must reimburse parents for private placement of a student with special education needs if a court determines that the private setting provided an appropriate education, but the public school's proposed individualized

---

[1]Adam was age 24 at the time of the district court's decision; the IDEA requires each state to effect a policy that ensures that "all children with disabilities aged 3 through 21" have the right to a FAPE. *See* C.F.R. § 300.121.

3

educational program ("IEP") did not. *Id.* at 369. The district court noted below that after *Burlington*, parents in disagreement with a proposed IEP could place their children in private settings and later be reimbursed for tuition for any services that were appropriate. *See id.* Several courts of appeals, including this Court, later extended *Burlington*'s reasoning to award compensatory education. School districts were ordered to provide education to a disabled child past his or her twenty-first birthday to make up for any earlier deprivation of an appropriate education. *See Pihl*, 9 F.3d at 189; *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 395 (3d Cir. 1996); *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir. 1991); *Bd. of Educ. of Oak Park v. Ill. State Bd. of Educ.*, 79 F.3d 654, 660 (7th Cir. 1996); *Miener v. Missouri*, 800 F.2d 749, 753 (8th Cir. 1986). In a case similar to the present one, we said:

> Like the retroactive reimbursement in *Burlington*, imposing liability for compensatory educational services on the defendants "merely requires [them] to belatedly pay expenses that [they] should have paid all along," 105 S.Ct. at 2003. Here, as in *Burlington*, recovery is necessary to secure the child's right to a free appropriate public education. *Id.*

*Hall*, 941 F.2d at 407.

The defendants argue that the district court erred in finding that plaintiffs' claim for compensatory education is not moot. The school system suggests that the very question of whether a claim for compensatory education is viable "is inappropriate speculation" because "such relief was not an issue before the administrative law judge, nor was it requested of the District Court." To the contrary, it is clear from the record of the proceedings before the ALJ that plaintiffs did in fact request compensatory education, such as they seek now. In its initial decision affirming the ALJ, the district court specifically noted that the ALJ "denied Petitioner's claim for compensatory education." It is this claim that the district court addressed in determining on remand that the claim

4

for compensatory education is not moot.

Defendant also takes umbrage with Adam Barnett's testimony that he left the Shrine School because of harassment. "No issues were raised [before the ALJ] contenting [sic] that the Plaintiff was the subject of any harassment by the Memphis School System . . . ." Plaintiff did provide testimony about harassment, however, during the proceeding held pursuant to our order remanding and instructing the district court to hear additional evidence to determine whether Adam's removal from the Memphis City Schools moots this case. Defendant relied on *Russman v. Bd. of Educ.*, 260 F.3d 114 (6th Cir. 2001), a case in which the plaintiff left school on her own accord, to argue that a plaintiff's claims are rendered moot when the student withdraws from school. Adam Barnett's testimony was offered to rebut that argument. According to Adam, he left the Shrine School at least in part because of harassment from school staff as a result of his bringing a prior personal injury lawsuit. His situation is also different from that of the plaintiff in *Russman* because he is currently enrolled in an educational program and requests more educational services from the Memphis City Schools, whereas the plaintiff in *Russman* had no intention of re-enrolling in public or private school. The district court did not err by allowing testimony, pursuant to our order to hold an evidentiary hearing, that touched upon Adam's reasons for leaving the Memphis City Schools and was offered in response to defendant's mootness claim.

## II.

Having established that plaintiffs' claim for compensatory education is not moot, we must next address the merits of plaintiffs' claim that the Memphis City Schools failed to provide Adam with a FAPE as required under the IDEA. A court's inquiry into suits brought under the IDEA is twofold. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). First, the court must determine whether

the state has complied with the procedures set forth in the IDEA. *Id.* Second, the court assesses whether the IEP developed through those procedures is reasonably calculated to enable the child to receive educational benefits. *Id.* at 206-07. In examining these issues, we review the district court's findings of fact under a clearly erroneous standard of review, and its conclusions of law *de novo*. *Knable v. Bexley City School District*, 238 F.3d 755, 764 (6th Cir. 2001); *Tucker v. Calloway County Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir. 1998).

The district court properly found that the Memphis City Schools committed procedural violations of the IDEA in failing to inform Adam's parents of the results of his 1995 psychological evaluation and his 1998 vocational evaluation. The procedural requirements of the IDEA entitle parents of a disabled child to "examine all records relating to such child," 20 U.S.C. § 1415(b)(1), and to participate in the formulation of the child's IEP. 20 U.S.C. § 1414(d)(1)(B). Despite the fact that the Barnetts met with Shrine School officials in 1996, 1997, 1998, and 1999 to develop Adam's annual IEP, they were never informed of the results of his most recent evaluations. The IEP team, including the parents, therefore, did not consider the most recent data or have the opportunity to revise Adam's IEP to address the results of his reevaluations. *See* 20 U.S.C. § 1414(c)(1)(A); § 1414(c)(1)(B)(i)(ii)(iv); § 1414(d)(3)(A)(ii); § 1414(d)(4)(A)(ii). The failure of the school to inform Adam's parents of the results of his evaluations prevented the parents from participating adequately and meaningfully in the formulation of his IEPs. These failures violated the procedural requirements of the IDEA.

Since a school system's failure to comport with the procedural requirements of the IDEA will constitute a denial of a FAPE only if such violations caused substantive harm to the child or his parents, *Knable*, 238 F.3d at 764, we must next address whether the IEPs developed through the

6

act's procedures were reasonably calculated to enable Adam to receive educational benefits. Although the IDEA does not require the state to "maximize the potential of each handicapped child," the statute does require that the schools provide "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Rowley*, 458 U.S. at 200-01. We have specifically recognized that "the educational benefits the state does provide must be more than *de minimis* in order to be appropriate." *Doe v. Board of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 459 (6th Cir. 1993) (internal quotation omitted).

Despite finding that the Memphis City Schools committed procedural violations of the IDEA, the district court nevertheless held that these procedural violations do not preclude the ALJ's decision that Adam received a FAPE. The burden is on the parents to prove by a preponderance of the evidence that the IEPs were inadequate, *Renner v. Bd. of Educ of the Pub. Sch. of Ann Arbor*, 185 F.3d 635, 642 (6th Cir. 1999), and as we noted in our order remanding this case, we have some sympathy with the school system's contention that the evidence presented by Adam's parents was not particularly helpful in demonstrating whether Adam's capabilities are as extensive as his parents claim. But as we noted in that order, the intended beneficiary of the IDEA is not the parents of the individual with a disability, but the disabled individual. In its brief as *amicus curiae* in support of plaintiffs, the United States aptly recognized that the objective evidence supports the conclusion that Adam did not receive more than a *de minimis* educational benefit from the Memphis City Schools. We agree.

The district court expressly recognized that Adam's scores on the Vineland Adaptive Behavior Scales, measuring a student's personal and social skills, decreased between 1995 and 1999, indicating "that he lost skills during those years." The results of Adam's 1998 vocational evaluation

also showed that he had developed no independent living skills or vocational abilities, but the court never considered this evidence. The Woodcock-Johnson Tests of Achievement measure what a student actually learns in subjects such as math and reading, and Adam exhibited essentially the same achievement level from 1995-1999 prompting the school system to note that "Adam earned standard scores significantly lower than would be expected based upon his current level of intellectual functioning."[2] The district court nevertheless disregarded this lack of meaningful progress because the second administration of the test was unstandardized as the material was enlarged and extra spaces were placed between the words to accommodate Adam's visual deficiency. We think it not insignificant that Adam's scores failed to improve appreciably even after accommodations were contrived to account for his physical limitations. The district court also considered Adam's improvement on the Wechsler Intelligence Scale to be evidence that he received an educational benefit. Not only does the Wechsler test measure natural intelligence rather than academic achievement, but Adam's scores also consistently remained within the applicable margin of error. The results of the Wechsler tests, therefore, were insignificant and in no way indicative of an educational benefit.

The record demonstrates that when Adam failed to reach the goals set forth in his IEPs in any given year, the school district did not recommend, let alone adopt or implement, any approaches to his instruction different from those already demonstrated to have failed. Despite the district court's reliance on the testimony of Betty Pulley, Adam's former math teacher, who testified that he made

---

[2]In 1995, when Adam was 16, his broad reading score was at age level six years, nine months, with a grade equivalent of 1.3. In mathematics (applied problems), his score placed him at age level five years, eleven months, with a grade equivalent of K.8. In 1999, when Adam was 21, his broad reading score was at age level seven years, one month, with a grade equivalent of 1.5, while his mathematics score was at age level six years, 9 months, with a grade equivalent of 1.5. At all times he remained in the lowest one percentile in terms of achievement.

steady improvement in her class, in addition to "gradual slow progress" in other areas, neither his IEPs nor his test results corroborate such a conclusion. Ms. Pulley's testimony, however, does suggest that Adam has been capable of progressing beyond that which was called for in the IEPs. Accordingly, we find that the district court erred in concluding that Adam received a FAPE as required by the IDEA, and plaintiff is entitled to compensatory education.

## III.

For the foregoing reasons, we **AFFIRM** the decision of the district court on the issue of mootness. We **REVERSE** the decision of the district court as to plaintiffs' claims under the IDEA and **REMAND** for further consideration as to the appropriate relief.

KENNEDY, Circuit Judge, concurring. I agree with the majority that plaintiff's case is not moot. I also agree with the majority that plaintiff did request compensatory education at the administrative hearing in that he was asking for a transitional plan and transitional services so that he could achieve some type of community integration and level of independence in the work world.

I agree with the ALJ and the district court's original decision that the plaintiff, who had the burden of proof to establish that Adam failed to achieve progress at Shrine School, did not present any evidence that he had not made progress. The evidence plaintiff presented established only that with other assistive technology he might well have made greater progress.

However, I would find that the ALJ's determination that Adam's transitional plans complied with the IDEA was not supported by substantial evidence and that he is, therefore, entitled to relief.

The ALJ relied on the testimony of Mr. Raney that the plan documents (beginning with the 1994 IEP) "go completely beyond requirements" to support the conclusion that Adam's transitional plans met IDEA requirements. However, Mrs. Barnett testified that Adam received no transitional services and the school district offered no evidence to the contrary. There was no evidence he received transitional services. Karen Anderson, an instructor in the University of Memphis College of Education, who taught undergraduate and graduate teachers how to conduct IEP meetings and write IEPs, and was formerly director of the Mid-South Access Center for Technology at the university, an evaluation site for individuals with disabilities of all ages, testified that Adam's transitional goals were first written beginning in 1994. (Hearing Transcript 334) None were noted as being completed. She also testified that some were inappropriate for a transition plan. For example, one goal states at age 20 Adam will acquire a driver's license. There was no explanation of how he could attempt to achieve that goal or what steps could be taken. There was no indication

10

anywhere in the transition plans about what Adam would be doing vocationally after schooling. Nothing about possible employment -- nothing even about supported employment. Ms. DePriest, the Director of Exceptional Children for the Memphis City School System who monitors compliance with the IDEA, testified that nothing in Adam's record indicated he had received any vocational rehabilitation services in the five years before the hearing . (Hearing Transcript 385).

Ms. DePriest acknowledged that there were no records that showed any plan as to how Adam would attempt to achieve a driver's license and that many of the stated objectives that involved the parents doing something were not designed for Adam's unique needs to transition him to the real world. (Hearing Transcript 390-391).

Not until the 1998-99 IEP did a transition plan say anything about interaction with community agencies and that gainful employment is a goal. (Hearing T. 399) However, Adam was determined during the course of that year not to be entitled to vocational rehabilitation.

Indeed, Ms. DePriest acknowledged that even Adam's transition plan for 1998 was not an appropriate transition plan.

Because the transitional plans were such an important component of the IEP's for the last few years of Shrine school, I agree that he did not receive a FRAP during his last years at Shrine School and concur.

11