RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

**17-2195 /17-2197**
(2:13-cv-1180)

JEANNINE L. SOMBERG, on behalf of Dylan S. Somberg,

      *Plaintiff-Appellee/Cross-Appellant*,

    *v.*

UTICA COMMUNITY SCHOOLS,

      *Defendant-Appellant/Cross-Appellee*,

RICHARD J. ALEF,

      *Defendant-Appellee/Cross-Appellant*.

**17-2196/17-2313**
(2:13-cv-14022)

UTICA COMMUNITY SCHOOLS,

      *Plaintiff-Appellant/Cross-Appellee*,

    *v.*

RICHARD J. ALEF,

      *Defendant-Appellee/Cross-Appellant*.

Nos. 17-2195/2196/2197/2313

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:13-cv-11810; 2:13-cv-14022—Robert H. Cleland, District Judge.

Argued: October 3, 2018

Decided and Filed: November 5, 2018

Before: GILMAN, KETHLEDGE, and BUSH, Circuit Judges.

---

### COUNSEL

**ARGUED:** Robert A. Lusk, Anya M. Lusk, LUSK ALBERTSON PLC, Detroit, Michigan, for Appellant/Cross-Appellee.    Richard J. Alef, Rochester, Michigan, for Appellees/Cross-Appellants.  **ON BRIEF:** Robert A. Lusk, Anya M. Lusk, LUSK ALBERTSON PLC, Detroit, Michigan, for Appellant/Cross-Appellee.    Richard J. Alef, Rochester, Michigan, for Appellees/Cross-Appellants.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge.    This case arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*    Jeannine Somberg filed an administrative complaint on behalf of her autistic son, Dylan Somberg, alleging that Utica Community Schools (UCS) failed to provide him with a Free Appropriate Public Education (a FAPE) under the IDEA during the 2012–2013 school year.

After nearly six years of litigation, the district court entered summary judgment in favor of the Sombergs, affirming an administrative law judge's (ALJ's) holding that Dylan was denied a FAPE during the school year in question, but reversing the ALJ's decision that Dylan was not entitled to any compensatory education for the deprivation.    The court ordered UCS to pay for 1,200 hours of tutoring and one year of transition planning as compensatory education.    In addition, the court awarded the Sombergs $210,654.65 in attorney fees and costs.

UCS now appeals, and the Sombergs cross-appeal.    For the reasons set forth below, we **AFFIRM** all aspects of the district court's judgement.

### I. BACKGROUND

#### A.    Factual background

Jeannine contends that UCS violated the IDEA because the Individualized Educational Plan (IEP) that it implemented for Dylan during the 2012–2013 school year did not provide him with a FAPE.    Dylan is currently 24 years old and suffers from Autism Spectrum Disorder,

Attention Deficit Hyperactivity Disorder, Tourette's Disorder, and symptoms of Obsessive-Compulsive Disorder.  During the 2012–2013 school year, Dylan was 18 years old and in his fifth year of high school at UCS's Eisenhower High School.

UCS provided Dylan with special education services and annual IEPs.  Dylan's IEP for the 2011–2012 school year terminated in June 2012 because it was written under the assumption that he would graduate after four years and not remain at Eisenhower for a fifth year.  In September 2012, UCS amended Dylan's 2011–2012 IEP to extend through November 2012 without substantively changing any portion of the IEP.  The IEP set several annual goals for Dylan concerning daily living, math, reading, social and emotional situations, speech and language, and writing.  Each annual goal was supported by one or more short-term objectives.

In addition to delineating annual goals, the IEP provided that Dylan's IEP team would implement and document a trial of "assistive technology" for Dylan and that he would receive a "50/50 curriculum," meaning that his curriculum would be evenly split between special education classes and general education classes.  The "Post-Secondary Vision and Transition Activities" section listed several of the activities in which Dylan was interested, such as his interest in animals, that could lead to employment.  But that section did not list any accompanying next steps or resources.

Despite the IEP's provision regarding a 50/50 curriculum, UCS attempted to place Dylan in Community Based Inclusion (CBI) for the last two periods of his school day.  CBI, according to the testimony of a special education teacher at the due process hearing,  "represents direct instruction . . . in the areas of functional skills within a community setting . . . [such as] daily living skills, employability training, recreation[,] leisure, [and] personal social skills."

Dylan was enrolled in three special education classes during his first, second, and third periods and one general education class during his fourth period.  Placing Dylan in CBI for his fifth and sixth periods was therefore inconsistent with his IEP.

After Jeannine objected to Dylan's placement in CBI, UCS provided him with instruction in the principal's office.  There, Dylan was secluded from other students and, in Jeannine's opinion, did not receive "homework or other meaningful education."  Jeannine asked to see a

class schedule so that she could find general education classes for Dylan to attend during his fifth and sixth periods as an alternative to CBI or the principal's office, but UCS allegedly ignored her request until her attorney brought the issue to the ALJ's attention. Dylan then selected several general education classes in which to enroll, but a UCS employee told him that the classes he had chosen were full.

UCS eventually admitted that Dylan's class schedule between September 4, 2012 and October 1, 2012 was not consistent with his IEP, thereby constituting the denial of a FAPE. By June 2013, UCS had reevaluted Dylan and developed a new IEP, which was amended several times prior to the 2013–2014 school year. UCS continued to complete annual IEPs for Dylan for several years thereafter that it contends were in compliance with the IDEA. But Jeannine voluntarily withdrew Dylan from UCS in October 2015 and enrolled him in a private school.

**B.    Procedural background**

In September 2012, the Sombergs filed an administrative complaint with the Michigan Department of Education, alleging that UCS's IEP for Dylan did not provide him with a FAPE as required by the IDEA. They contended, among other things, that UCS denied Dylan a FAPE by requiring him to attend CBI in violation of his IEP. The Sombergs amended the complaint twice to raise additional IEP issues.

UCS presented the Sombergs with a written offer of settlement in October 2012, proposing to, among other things, "[d]etermine whether [Dylan] is entitled to compensatory education due to his assignment to [CBI] at the beginning of the 2012–2013 school year and, if so, provide the necessary compensatory education." The Sombergs rejected UCS's offer, countering with a request for $7,195 in cash to compensate for Dylan's denial of a FAPE between September 3, 2012 and October 16, 2012, plus attorney fees. No settlement was reached.

The ALJ assigned to the case subsequently held a three-day due-process hearing in December 2012. There were four issues in contention:

1. Was Dylan denied a FAPE for the 2012–2013 school year because of procedural errors in the September 7, 2012 IEP?

2. Was Dylan denied a FAPE for the 2012–2013 school year because the September 7, 2012 IEP lacked measurable goals for Dylan?

3. Was Dylan denied a FAPE because the September 7, 2012 IEP failed to address a proper transition plan?

4. Was Dylan denied a FAPE in the least restrictive environment?

The ALJ issued her Decision and Order in January 2013. First, the ALJ held that UCS did not violate any of the procedural requirements for developing an IEP. The ALJ next held that Dylan was denied a FAPE for the 2012–2013 school year because all but one of the goals set forth in the September 2012 IEP were not measurable as the IDEA requires. Third, the ALJ held that Dylan was denied a FAPE during the 2012–2013 school year because the transition plan in the September 2012 IEP was "woefully inadequate." Finally, the ALJ held that the Sombergs had not established that Dylan's IEP was inconsistent with the IDEA's least-restrictive-environment requirement, which provides that school districts must educate students with disabilities alongside students without disabilities to the maximum extent possible.

The ALJ also noted that UCS had failed to comply with the IEP's mandate to implement and document a trial of assistive technology. And because UCS admitted that Dylan's class schedule at the beginning of the 2012–2013 school year was not consistent with his IEP, the ALJ noted that this too denied Dylan a FAPE. The ALJ accordingly ordered UCS to develop a compliant IEP within 30 school days and complete the assistive technology assessment within 15 school days. Despite finding these multiple FAPE deficiencies, the ALJ determined that Dylan was not entitled to any compensatory education under the IDEA.

The Sombergs appealed the ALJ's Decision and Order by filing a complaint in the United States District Court for the Eastern District of Michigan. They contended that the ALJ erred in (1) finding that UCS complied with the IDEA's procedural requirements for developing an IEP despite UCS not allowing Jeannine to meaningfully participate in the IEP process, and (2) failing to award any compensatory education to Dylan. As the "prevailing part[ies]" under the IDEA, they also sought attorney fees and costs.

UCS responded by filing a counterclaim against Jeannine and a third-party complaint against her attorney, Richard Alef, seeking attorney fees and costs under the IDEA. In both the counterclaim and the third-party complaint, UCS alleged that Jeannine and Alef had filed the administrative complaint for an improper purpose and had made fictitious claims, thus entitling UCS to attorney fees and costs.

By stipulation of the parties, the court severed the third-party complaint against Alef into a separate action. The court ultimately dismissed the claim against him. *Utica Cmty. Schs. v. Alef*, No. 13-14022, 2017 WL 5892223, at *2 (E.D. Mich. Feb. 9, 2017). UCS appealed, and this court affirmed. *Utica Cmty. Schs. v. Alef*, 710 F. App'x 673, 676 (6th Cir. 2017). The district court also eventually held that UCS's counterclaim against Jeannine was without merit.

On the merits of the Sombergs' appeal of the ALJ's order, the district court denied the parties the opportunity to conduct discovery beyond the administrative record. The parties subsequently filed cross-motions for summary judgment. In the Sombergs' motion, they contended that the court should reverse the ALJ's findings that (1) there was no procedural violation of the IDEA despite UCS not allowing Jeannine to participate in the IEP process, and (2) Dylan was not entitled to any compensatory education. UCS in turn contended in its cross-motion that it had always provided Dylan with a FAPE and that, even if it had not, no compensatory education was due him.

In March 2016, the district court granted the Sombergs' motion for summary judgment and denied UCS's cross-motion. The court affirmed the ALJ's decision that there was no procedural violation of the IDEA during the 2012–2013 school year, affirmed the ALJ's decision that Dylan was denied a FAPE during that school year due to the IEP's lack of measurable goals and an adequate transition plan, but reversed the ALJ's order that Dylan was not entitled to any compensatory education. Accordingly, the court ordered UCS to pay for a yet-to-be-determined amount of compensatory education for Dylan, suggesting that "further proceedings and perhaps expert testimony [would] be required to determine the proper quality and quantity of compensatory education that must be awarded."

The district court later held a bench trial to determine the appropriate amount of compensatory education due Dylan for UCS's failure to provide him with a FAPE during the 2012–2013 school year. Based on the evidence presented at the bench trial, the court ordered UCS to pay for 1,200 hours of tutoring and one year of transition planning. Because the "details of the implementation" of the compensatory education were "beyond the ken of the court," it appointed a special master to oversee Dylan's compensatory education. The court also ordered UCS to pay the Sombergs $208,807.50 in attorney fees and $1,847.15 in expenses, which includes the fees and costs associated with litigating the administrative appeal and with defending Alef against UCS's third-party complaint. UCS has timely appealed, and the Sombergs have timely cross-appealed.

## II.  ANALYSIS

### A.    Standard of review

We review the district court's award of compensatory education and attorney fees under the abuse-of-discretion standard. *Bd. of Educ. of Fayette Cty. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007) (compensatory education); *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308–09 (6th Cir. 1988) (attorney fees). "A district court abuses its discretion when it relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Wikol ex rel. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004).

### B.    The IDEA and compensatory education

Under the IDEA, schools that receive federal funds for education must provide every disabled student with a FAPE. 20 U.S.C. § 1412(a)(1)(A). To provide a FAPE, schools must develop, review, and be prepared to revise an IEP for each such student. *Id.* § 1412(a)(4). "The IEP must (1) comply with the procedures set forth in the IDEA and (2) be 'reasonably calculated to enable the [student] to receive educational benefits.'" *L.H. v. Hamilton Cty. Dep't of Educ.*, 900 F.3d 779, 788 (6th Cir. 2018) (alteration in original) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982)). To be reasonably calculated to enable the student to receive educational benefits, the IEP must include, among other things,

"a statement of measurable annual goals," "a description of how the child's progress toward meeting the annual goals . . . will be measured," "appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills," and "transition services (including courses of study) needed to assist the child in reaching those goals."  20 U.S.C. § 1414(d)(1)(A)(i).

If a parent or guardian is unhappy with her child's IEP, the IDEA provides several procedural mechanisms by which she may challenge it.  One option allows aggrieved parents to submit a complaint to the school.  *Id*. § 1415(b)(6).  If that fails to resolve the issue, then the parents and the school may enter voluntary mediation.  *Id.* § 1415(e)(2)(A)(i).  The next step allows the parents to file a due process complaint with a state administrative agency, which will subsequently assign an independent ALJ to hold a due process hearing.  *Id.* § 1415(b)(7)(A); 34 C.F.R. § 300.507.  Once the ALJ rules, either aggrieved party may file suit in federal district court to challenge the decision.  20 U.S.C. § 1415(i)(2)(A).

A complaint concerning an IEP may allege both procedural and substantive violations of the IDEA.  *Id.* § 1415(f)(3)(E).  Procedural violations generally concern "the preparation of an IEP."  *Rowley*, 458 U.S. at 206.  Substantive violations concern the substance of the IEP; namely, whether the school has provided "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017).

If a district court determines that a school district has violated the IDEA by denying the student in question a FAPE, then the court shall "shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  In so doing, the court has broad discretion.  *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 770 (6th Cir. 2001).  One type of relief that a court may provide is an award of compensatory education.  *L.M.*, 478 F.3d at 316 ("An award of compensatory education is an equitable remedy that a court can grant as it finds appropriate [under § 1415(i)(2)(C)(iii)].").  Compensatory education is "[a] judgment that simply reimburses a parent for the cost of obtaining educational services that ought to have been provided free."  *Hall v. Knott Cty. Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir. 1991).

**C.      Because the Sombergs are seeking backward-looking relief, the case is not moot.**

UCS's initial contention is that the district court erred in failing to dismiss the case on mootness grounds because, after the alleged FAPE violations occurred, Jeannine withdrew Dylan from UCS.  The court concluded that the case was not moot because the Sombergs sought compensatory education to remedy past FAPE violations rather than injunctive relief.

As the district court correctly concluded, the present case is not moot.  "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party, and a change in circumstances that renders a court unable to grant petitioners meaningful relief may prudentially moot an action."  *Ky. Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 406 (6th Cir. 2013) (citations and internal quotation marks omitted).  In *Barnett v. Memphis City Schools*, 113 F. App'x 124 (6th Cir. 2004), this court addressed a similar issue to the one now before us, holding that a student's claim for compensatory education was not moot when he aged out of the school district that had denied him a FAPE.  This is because "[c]ompensatory education is a judicially-constructed form of relief designed to remedy *past* educational failings." *Id.* at 126 (emphasis added).  The district court in *Barnett* therefore had the ability to award meaningful relief to the student, even when he no longer attended school within the district.  *See id.*

The cases that UCS cites, including *Fialka-Feldman v. Oakland University Board of Trustees*, 639 F.3d 711 (6th Cir. 2011), are distinguishable.  In those cases, the students were seeking injunctions.  *See, e.g.*, *id.* at 716–17.  But here, neither the Sombergs nor UCS challenged the ALJ's award of prospective, injunctive relief.  The only merits issue before us is whether the Sombergs are entitled to backward-looking relief in the form of compensatory education.  And an award of compensatory education would provide meaningful relief to Dylan as a remedy for UCS's past IDEA violations.  The fact that Dylan is not currently a student within the UCS system is irrelevant because the relief would reimburse the Sombergs for "the cost of obtaining educational services that ought to have been provided free." *See Hall*, 941 F.2d at 407.  Accordingly, the district court correctly held that this case is not moot.

**D.    The district court did not abuse its discretion in awarding the Sombergs compensatory education.**

The merits issues presented in this appeal are relatively narrow.  UCS has not appealed the district court's affirmance of the ALJ's findings that UCS denied Dylan a FAPE during the 2012–2013 school year.  In fact, UCS admitted in the administrative record that it failed to comply with Dylan's IEP in the beginning of the September 2012 school year by assigning him to CBI and failing to provide him with a 50/50 curriculum.

UCS instead contends that we should reverse the district court's order awarding Dylan compensatory education.  But the Sombergs, in their cross-appeal, contend that the court erred in awarding *only* 1,200 hours of tutoring and one year of transition planning as compensatory education to Dylan.  The central issues in this appeal are therefore (1) whether the district court abused its discretion in reversing the ALJ's determination that Dylan is not entitled to any compensatory education for the denial of a FAPE during the 2012–2013 school year, and (2) whether the manner and amount of compensatory education that the court awarded constitutes an abuse of discretion.

### 1.    UCS's appeal

#### a.    The district court's conclusion that it owed little deference to the ALJ's decision regarding compensatory education constitutes harmless error.

UCS argues that the trial court erred in concluding that it owed less deference to the ALJ's decision that the Sombergs were not entitled to any compensatory education.  In reviewing an ALJ's decision in an IDEA case, district courts apply a "modified de novo" standard that requires the court "to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 849–50 (6th Cir. 2004) (internal quotation marks omitted).  When educational expertise is relevant to an ALJ's finding, the reviewing court affords the finding more weight. *McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003).  But when educational expertise is not

relevant to the finding, the reviewing court affords the finding less weight because the court is as well suited to evaluate the issue as the ALJ. *Id.*

The ALJ in the present case held, without any explanation, that "[Dylan] is not entitled to compensatory relief." This lack of explanation caused the district court to conclude that the ALJ's holding was not based on educational expertise. And because the court determined that the finding was not based on educational expertise, the court afforded it "considerably less deference."

UCS contends, however, that the ALJ's finding without any explanation can still be based on educational expertise. This court may presume, UCS argues, that the ALJ's decision is based on educational expertise because the Sombergs introduced no evidence at the administrative hearing to demonstrate any educational loss due to UCS's IDEA violations. UCS's argument is a plausible one. *See M.G. by & through C.G. v. Williamson Cty. Schs.*, 720 F. App'x 280, 284 (6th Cir. 2018) (allowing a presumption that an ALJ's findings were based on educational expertise). On the other hand, even a decision based on educational expertise is less persuasive if no reasoning is provided. Although the district court likely erred in concluding that it owed "considerably less deference" to the ALJ's finding that Dylan was not entitled to compensatory education, we find that the error was harmless.

The district court reversed the ALJ's conclusion about compensatory education only after evaluating the preponderance of the evidence in the record, as required by the modified de novo standard, and later conducted a bench trial on this very issue. In a judicial review of other administrative agency decisions, by contrast, courts apply the highly deferential "substantial evidence" standard. *See, e.g.*, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (explaining that judicial review of decisions of the Commissioner of Social Security "is limited to determining whether it is supported by substantial evidence"); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (defining "substantial evidence" as "more than a scintilla of evidence but less than a preponderance").

So even if the district court in the present case had afforded a higher level of deference to the ALJ, it still would have had to apply the modified de novo standard, independently

reexamining the evidence for itself.  It would not have been able to "simply adopt the state administrative findings without an independent re-examination of the evidence."  *See Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998).  In sum, we find no reversible error regarding the district court's determination that Dylan is entitled to compensatory education.

UCS next contends that the Sombergs bore the burden of proving Dylan's entitlement to compensatory education and the extent of his educational loss, and that the Sombergs failed to meet that burden.  The district court did not explicitly discuss which party bore the burden of proof on this issue, but reasoned that Dylan's need for compensatory education was obvious from the nature of the IDEA violations in the record—which included a lack of measurable goals and Dylan's placement in a secluded room.  Moreover, after a bench trial, the court cited other evidence that UCS's IDEA violations had caused Dylan educational harm.

We further note that the IEP violations at issue in this case are substantive violations.  *See L.H.* *v. Hamilton Cty. Dep't of Educ.*, 900 F.3d 779, 789 (6th Cir. 2018) (noting that substantive violations "concern the substance of the IEP; namely whether the school has provided an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances" (citation omitted)).  Unlike procedural IEP violations, which require parents to meet their burden of persuasion to show an "educational loss," substantive IEP violations do not require such a showing.  20 U.S.C. § 1415(f)(3)(E)(ii)(III); s*ee Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 769 (6th Cir. 2001) ("[A] procedural violation of the IDEA is not a *per se* denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents.").  Accordingly, the district court did not abuse its discretion in holding that Dylan is entitled to compensatory education.

### b.      The district court did not abuse its discretion by declining to admit the MDE's Decision into evidence.

UCS next argues that the district court erred because it refused to permit UCS to introduce the decision of the Michigan Department of Education dated November 10, 2016 (the "MDE's Decision") with respect to the Sombergs' complaint filed with that agency.  We review

a district court's decision to exclude evidence for abuse of discretion. *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 750 (6th Cir. 1996) (holding that reversal is warranted only "when the abuse of discretion results in more than harmless error").

UCS asserts that if the district court had entered the MDE's Decision into evidence, the court "would have been compelled to conclude:  there was no valid reason for the Parent to withdraw the Student from the District in October 2015; the case was moot; and, the Parent was not entitled to any reimbursement for the private placements in which she enrolled the Student." But even if we were to assume that these alleged consequences resulted from the exclusion of the MDE's Decision, they do not show harmful error.  This appeal concerns whether the district court erred in awarding compensatory education, not if the Sombergs had a valid reason to withdraw Dylan from UCS.  Moreover, the admission of the MDE's Decision would not alter our conclusion that the case is not moot.  Because the district court awarded backward-looking relief, as we described above, this evidence has no bearing on the issue of mootness.  Finally, the MDE's decision has no bearing on the remedy here.  The monetary award in this case relates back to Dylan's denial of a FAPE for the 2012-2013 school year and not to reimbursements for private placements.  We therefore will not disturb the district court's evidentiary ruling regarding the MDE's Decision.

> ### c.    The district court did not err in considering evidence outside of the administrative record during the bench trial.

UCS further contends that the district court erred in permitting the Sombergs to introduce evidence and rely on theories during the bench trial that were not presented to the ALJ. Specifically, at the bench trial, the Sombergs argued that Dylan was denied a FAPE not only during the 2012–2013 school year, but also during the four-year period between 2008 and 2012. The Sombergs also presented evidence about Dylan's level of functioning and educational progress during school years other than the 2012–2013 school year, about the Sombergs' contentious relationship with UCS, about UCS's failure to provide Dylan with a "personal curriculum," and about various other incidents between 2008 and 2015 in which UCS allegedly mistreated Dylan.

A district court reviewing an ALJ's decision in an IDEA case "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."   20 U.S.C § 1415(i)(2)(C).   The court may consider evidence outside of the administrative record and issues that were not presented to the ALJ if they are relevant to the issues that were before the ALJ.  *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 850–51 (6th Cir. 2004) ("There is no evidence, for example, that the district court used the additional evidence to go beyond the scope of the matters before the ALJ; indeed, the district court took great care to limit testimony to matters relevant to [the IEP before the ALJ].").

When a district court looks beyond the administrative record, its decision to do so is reviewed under the abuse-of-discretion standard.  *Id.* at 850.  "A district court could . . . be found to have abused its discretion if it allowed additional evidence to change the character [of] the hearing from one of review to a trial de novo."  *Id.* at 851 n.8 (internal quotation marks omitted). The district court must therefore avoid "us[ing] additional evidence to rule upon issues beyond those presented to the ALJ."  *Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999).

In the present case, the district court did not use the additional evidence to decide any issue not previously presented to the ALJ.  The purpose of the trial was to determine the amount of educational loss that Dylan had suffered due to the inadequate IEP during the 2012–2013 school year, an issue inextricably linked to the ALJ's ruling on whether Dylan was denied a FAPE for that school year.

The district court would have been unable to discern the extent of Dylan's educational loss in a vacuum.  Evidence of his abilities and progress in the years before and after the IDEA violation is therefore relevant in determining whether he suffered a loss during the 2012–2013 school year.  Without such testimony, for example, the court would have had no baseline against which to measure Dylan's progress (or lack thereof) during the year in which the violation occurred.  And without such a baseline, the court would have been unable to assess whether and how much Dylan progressed, stalled, or regressed because of UCS's IDEA violation.  The court

therefore did not abuse its discretion in allowing witnesses to testify about matters outside of the 2012–2013 school year.

Moreover, even if the Sombergs inappropriately presented a new theory at trial concerning Dylan's purported educational loss over a four-year period, the district court awarded only one year's worth of compensatory education. (According to the Sombergs' expert witness, 1,200 hours of private tutoring amounts to one year of instruction). An award of one year of tutoring to compensate a student for one year of being denied a FAPE does not constitute an abuse of discretion.

###### d.     *UCS did not raise the doctrine of avoidable consequences before the district court, and there is no other basis for us to review the issue.*

UCS next contends that the district court erred in awarding compensatory education to the Sombergs because Dylan's alleged educational loss was an avoidable consequence of their failure to accept UCS's settlement offer. Specifically, UCS argues that if the Sombergs had accepted the settlement offer in October 2012, then UCS would have provided Dylan a new IEP and the Sombergs would have avoided the consequences of the deficient IEP. But UCS did not raise this argument before the district court, thus precluding our consideration of the issue on appeal. *See J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991) ("Issues not presented to the district court but raised for the first time on appeal are not properly before the court.").

Nor has UCS proffered any exceptional circumstances warranting review of its avoidable-consequences argument or any reason why a failure to review the issue would result in a miscarriage of justice. *See United States v. Chesney*, 86 F.3d 564, 567–68 (6th Cir. 1996) (explaining that we may review an issue not raised below in exceptional circumstances or when application of the rule against considering new issues on appeal would result in a miscarriage of justice). There is, accordingly, no basis for us to review UCS's argument that Dylan's alleged educational loss was an avoidable consequence of the Sombergs' failure to accept UCS's settlement offer.

### e.    The district court provided a principled basis for its award of compensatory education.

Finally, UCS contends that we should reverse the district court's award of 1,200 hours of tutoring and one year of transition planning because the court provided no principled basis for the award. Rather than using a quantitative one-for-one approach to calculate an appropriate award of compensatory education, this court has adopted the D.C. Circuit's qualitative approach, which instructs courts to more flexibly calculate compensatory education in terms of placing the student in the same position that he or she would have occupied but for the school district's IDEA violations. *Bd. of Educ. of Fayette Cty. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007) (citing *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005)).

In the present case, the district court's opinion summarized the expert testimony on which it relied before ruling on the appropriate amount of compensatory education. The Sombergs' expert witness, for example, said that Dylan had consistently scored low on Woodcock-Johnson tests, which measure a student's grade level in certain subject areas, and that Dylan might have progressed more if he had been receiving proper instruction. Even UCS's expert witness testified that private tutoring could fill the gap in Dylan's education and that a single IDEA violation could put a student "way off track" later in his or her education. Also, as UCS's counsel conceded at oral argument, UCS did not proffer any contrary evidence regarding the appropriate amount of compensatory education for this case. Therefore, in light of the broad discretion that the IDEA confers on courts to "grant such relief as [it] determines is appropriate," *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (quoting 20 U.S.C. § 1415(e)(2)), the record supports the district court's exercise of discretion in this case to place the disabled child "in the same position" that he "would have occupied but for the school district's violations of IDEA." *See L.M.*, 478 F.3d at 317 (internal quotation marks omitted).

UCS nevertheless argues that the district court improperly ordered UCS to *pay for* 1,200 hours of tutoring and one year of transition planning, as opposed to ordering UCS to *provide* those services to Dylan. True enough, this court has interpreted Supreme Court precedent to hold that money damages are not available to remedy violations of the IDEA. *Crocker v. Tenn.*

*Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 386 (6th Cir. 1992) (interpreting *Sch. Comm. of Town of Burlington. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985), as holding that the IDEA does not authorize damages).  But this court has also concluded that a court "could appropriately award judgment for what it would now cost [a student] to obtain the educational services she says she ought to have received earlier," and that such an award would not constitute "damages." *Hall v. Knott Cty. Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir. 1991).

And as justification for ordering UCS to pay for compensatory education, rather than ordering UCS to directly provide such education, the district court pointed to "the contentious relationship that has developed between the parties over the course of this case's long history." Such hostility is evidenced by UCS's third-party complaint against the Sombergs' attorney, its counterclaim against Jeannine personally, Jeannine's and Dylan's testimony at trial, and the myriad of disagreements between the Sombergs and UCS that are raised in their respective briefs at trial and during this appeal.  The court therefore did not abuse its discretion in concluding that the most equitable solution would be to order UCS pay for Dylan's compensatory education, overseen by a special master, rather than force the parties to remain in their hostile relationship.

### 2.     *The Sombergs' cross-appeal*

We now turn to the Sombergs' cross-appeal.  The Sombergs argued at the bench trial that Dylan was entitled to four years of full-time tutoring as compensatory education.  They advance two reasons in support of their argument that the district court erred in awarding Dylan only 1,200 hours of tutoring.

### a.     *The district court did not err in failing to apply the* **Endrew F.** *standard to its calculation of compensatory education.*

The Sombergs first contend that, in view of the Supreme Court's decision in *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 137 S. Ct. 988 (2017), the district court erred in considering the fact that Dylan made "some advancement" at UCS despite being denied a FAPE.  In *Endrew F.*, the Court rejected the argument that an IEP need be only "reasonably calculated to provide some benefit" to the student in order to be in compliance with the IDEA.  137 S. Ct. at 998.  Instead, the Court held that an IEP must be "reasonably calculated

to enable a child to make progress appropriate in light of the child's circumstances," thus rejecting the "some benefit" standard. *Id.* at 998, 1002.

The Sombergs suggest that the district court's consideration of the fact that Dylan made "some advancement" at UCS is contrary to *Endrew F*. But the court did not consider Dylan's advancement in determining whether Dylan's IEP complied with the IDEA. Rather, it considered that fact in determining the appropriate amount of compensatory education. The *Endrew F*. standard has no application to this task because the issue in that case was whether an IEP complied with the IDEA, not whether a student was entitled to compensatory education. The district court therefore did not err in considering whether Dylan had made some advancement during the year that he was denied a FAPE.

> **b.      Even if the district court abused its discretion in allowing UCS's expert to testify at the bench trial, the error was harmless.**

The Sombergs' other contention is that the district court erred in allowing UCS's expert witness, Dr. Laurie Lundblad, to testify at the bench trial because neither her written disclosure nor her testimony complied with Rule 26(a)(2) of the Federal Rules of Civil Procedure. But nothing in the court's opinion suggests that it relied on Dr. Lundblad's testimony in deciding to award Dylan 1,200 hours of tutoring as opposed to four years of tutoring.

Dr. Lundblad did not suggest any specific amount or form of compensatory education. In fact, the district court appears to have afforded more weight to the Sombergs' expert witness, Dr. Derrick Fries, than to Dr. Lundblad. The court, for example, discounted Dr. Lundblad's disagreement with Dr. Fries about how much Dylan should have progressed each year and concluded that Dr. Lundblad's recommendation about assistive technology was not dispositive. In the end, Dr. Lundblad's testimony appears to have actually helped the Sombergs because the only testimony from Dr. Lundblad on which the court apparently relied was her testimony that private tutoring could fill the gap in Dylan's education and that a single IDEA violation could get a student "way off track" later in his or her education. So even if the court abused its discretion in allowing Dr. Lundblad to testify at the bench trial, the error appears to have been harmless. The court therefore did not err in the amount of compensatory education awarded to Dylan.

**E.     The district court did not abuse its discretion in awarding the Sombergs $208,807.50 in attorney fees and $1,847.15 in expenses.**

We now come to the final issue on appeal—attorney fees for the prevailing party. In IDEA proceedings, the district court has the discretion to award reasonable attorney fees to (1) "a prevailing party who is the parent of a child with a disability," (2) "a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation," or (3) "to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i). In the present case, the court held that the Sombergs were the prevailing parties and awarded them $208,807.50 in attorney fees and $1,847.15 in expenses. Both sides appealed the court's order.

*1.     UCS's appeal*

*a.     The relief granted by the district court was more favorable than UCS's settlement offer.*

UCS first argues that the Sombergs are not entitled to the amount of attorney fees awarded because the relief that the district court granted was not more favorable than UCS's settlement offer. The IDEA in fact prohibits an award of attorney fees for services performed after a school district has made a written settlement offer to a parent if, among other things, the court "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i).

UCS's offer of settlement proposed that UCS would complete a new IEP for Dylan, would complete an assistive technology evaluation, and would evaluate whether Dylan was entitled to compensatory education. But the district court went further by deciding that Dylan was indeed entitled to such relief. Acceptance of UCS's settlement offer would have provided the Sombergs with only an *evaluation* of whether Dylan was entitled to compensatory education, whereas the court's order made this form of relief *mandatory*. Accordingly, the court correctly

concluded that the relief obtained by the Sombergs was more favorable than UCS's settlement offer.

But UCS continues to argue that the district court's award of compensatory education was an avoidable consequence of the Sombergs' failure to accept UCS's settlement offer, which it contends should limit their right to attorney fees. As explained in Part II.D.1.d. above, however, UCS did not raise this argument before the district court. We thus have no basis to review the issue. And even if UCS had raised this argument before the district court, it would fail for the same reason just stated; i.e., the settlement offer did not provide the extent of relief that the Sombergs eventually received from the court.

### b.    *The district court did not abuse its discretion in awarding the Sombergs attorney fees despite the fact that they filed a due process complaint as opposed to a Part 8 complaint.*

UCS next argues that this court should reverse the district court's award of attorney fees because the Sombergs could have filed a state complaint under Part 8 of Michigan's Administrative Rules for Special Education (Part 8) instead of filing a due process complaint. This court, however, "requires that a district court award attorney fees to a prevailing party where no special circumstances militate against such an award." *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004). "[T]he burden is on the non-prevailing party to make a strong showing that 'special circumstances warrant a denial of fees.'" *Deja Vu v. Metro. Gov't of Nashville*, 421 F.3d 417, 422 (6th Cir. 2005) (quoting *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991)).

Part 8 is an informal complaint-resolution procedure that the state of Michigan has implemented in accordance with 34 C.F.R. §§ 300.151–300.153. The procedure is distinct from the formal due process procedures that the IDEA requires, but it similarly allows a parent to raise alleged IDEA violations. *See Southfield Pub. Schs. v. Dep't of Educ.*, No. 316856, 2014 WL 4628863, at *1 (Mich. Ct. App. Sept. 16, 2014) (per curiam). UCS contends that a Part 8 complaint would have been more cost-efficient for the Sombergs because the Michigan Department of Education and the "intermediate school district" in which UCS is located would have investigated the alleged IDEA violation without a hearing or attorney involvement. *See*

Mich. Admin. Code r. 340.1853.  This argument was raised in UCS's trial brief, but the district court did not address the issue.  In any event, the court reduced the reimbursable hours by 25% due to "the general inefficacy in which both parties litigated this case," including "counsel's apparent administrative inefficiencies."

UCS contends, however, that the district court should have denied an award of attorney fees altogether based on the Sombergs' choice to file a due process complaint without first filing a Part 8 complaint.  But UCS has pointed to no provision in the IDEA conditioning an award of attorney fees on a parent's choice to utilize one procedural vehicle over another.  Nor has UCS pointed to any case in which a prevailing parent who exhausted administrative remedies in accordance with the IDEA was altogether denied attorney fees for choosing to request a due process hearing over other available, nonmandatory state administrative procedures.  The court was therefore well within its discretion in not denying the Sombergs attorney fees simply because they requested a procedural remedy to which they were statutorily entitled.

> ### c.    *Any alleged error in including the fees and costs related to UCS's third-party complaint against Alef in the Sombergs' fee award was harmless.*

Finally, UCS contends that the district court erred in including in the Sombergs' fee award the fees and costs that Alef incurred in defending himself against UCS's third-party complaint.  UCS's argument is based on IDEA provisions that allow only parents and educational agencies to recover attorney fees and costs.

We must begin our inquiry "with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).  "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

According to the text of the IDEA's fee-shifting provision, a court may award reasonable attorney fees "to a prevailing party *who is the parent of a child with a disability*," or "to a prevailing party *who is a State educational agency or local educational agency*." 20 U.S.C. § 1415(i)(3)(B)(i)(I)–(II) (emphases added).  The text of the statute on its face, therefore, does

not entitle Alef to recover attorney fees because he is neither the parent of a disabled child nor an educational agency. *See Children's Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 522 (6th Cir. 2010) (holding that a private school was not entitled to attorney fees because "we need not look further than the language of the statute itself").

The district court recognized that allowing Alef to recover attorney fees would contradict the plain text of the IDEA and that this court had applied a textual approach in interpreting the IDEA's fee-shifting provision in *Children's Center for Developmental Enrichment*, 612 F.3d at 522. But the court held that Alef's attorney fees and costs should be included in the Sombergs' fee award because to hold otherwise "would appear to frustrate the purpose of the fee-shifting provision of the IDEA." The court then consolidated the IDEA case against UCS with the previously severed case against Alef for the purpose of determining the fee award.

But we need not decide whether this case is one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," *see Griffin*, 458 U.S. at 571, because, as the Sombergs argue, the counterclaim that UCS filed against Jeannine was nearly identical to the claims in the third-party complaint against Alef. The costs of defending the counterclaim and the third-party complaint were therefore virtually indistinguishable. Before the district court, the Sombergs claimed that Alef expended a total of 1,265.5 hours on this case, including 54.74 hours on the separate action against himself. The record indicates, however, that Alef came to the 54.74 hours by simply splitting the time spent defending the counterclaim against Jeannine in half. Because this suggests that Alef did not actually incur any significant fees in defending himself pro se against the third-party complaint that can be attributed solely to that action, any alleged error by the district court was harmless. The court's 25% discount of the hours awarded further mitigates against UCS's claim of an excessive award based on its third-party complaint against Alef.

**2.    *The Sombergs' challenge to the award of attorney fees***

We now turn to the Sombergs' cross-appeal on this issue. They contend that the district court abused its discretion by reducing Alef's billing rate from $250 to $220 per hour and in reducing the number of hours awarded by 25%.

**a.    *Subparagraph 1415(i)(3)(G) does not preclude a reduction of attorney fees in the district court's discretion.***

The Sombergs contend that the text of the IDEA prohibits the district court from reducing their fee award in any manner because of its finding that UCS unreasonably protracted the proceedings. But given that they too were found to have protracted the proceedings, the Sombergs' argument appears at first glance to be contrary to the IDEA's fee-shifting provision that requires a district court to reduce an award of attorney fees when the court finds that:

(i)   the parent, or the parent's attorney, . . . unreasonably protracted the final resolution of the controversy;

(ii)  the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv)  the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A) . . . .

20 U.S.C. § 1415(i)(3)(F) (subparagraph (F)).

But subparagraph 1415(i)(3)(G) (subparagraph (G)) states that "[t]he provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding." The text of subparagraph (G) thus appears to prohibit a court from reducing a fee award in accordance with subparagraph (F) when the court finds that the school district unreasonably protracted resolution of the proceedings.

In its opinion concerning attorney fees, the district court in fact determined that UCS had unreasonably protracted the proceedings in this case. The court went on to conclude, however, that

> [n]o doubt exists that [UCS] unreasonably protracted the proceedings in this case, . . . [but] the mere fact that Utica unreasonably protracted the proceedings does not by itself prevent this court from adjusting downwards the fees and costs requested after considering their reasonableness, especially where some evidence suggests that the Sombergs may have protracted [the] proceedings as well.

UCS argues that the net effect of subparagraphs (F) and (G), when both are found applicable, is to restore the court's normal discretion to set reasonable attorney fees.

In *Williams by & through Williams v. Fulton County School District*, 717 F. App'x 913, 917 (11th Cir. 2017), the Eleventh Circuit agreed with the position that UCS advances here. The *Williams* court concluded that if a district court determines that a school district unreasonably protracted the litigation, thus triggering the exception in subparagraph (G), the court "errs if it acts as though it is *required* to reduce the award under (F)" but does not err if "[i]ts reductions to the award were due to reasonableness, not because . . . (F) required it to reduce the award." *Id.* (emphasis added).

We agree with the Eleventh Circuit's analysis in *Williams*. First, as a matter of statutory construction, 20 U.S.C. § 1415(i)(3)(B)(i) (subparagraph (B))—the provision enumerating the circumstances that warrant an award of attorney fees—specifically says that, in those circumstances, the court *may* award *reasonable* attorney fees *in its discretion*. If a court determines, therefore, that fees are warranted under subparagraph (B), then it may award only *reasonable* fees. One way for a court to ensure that fees are reasonable is to reduce the suggested award if the amount requested is found to be unreasonable. Subparagraph (G), when found applicable, does not mandate that the district court abandon its discretion to ensure that fees are reasonable. Such a reading of subparagraph (G) would be inconsistent with subparagraph (B)'s instruction that only *reasonable* fees should be awarded in the court's discretion.

Moreover, this court interprets the fee-shifting provision of the IDEA in the same way that it interprets the fee-shifting provision of 42 U.S.C. § 1988, the attorney fees provision for

civil rights actions. *See Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993) ("We have interpreted [the fee-shifting provision of the IDEA] by analogy to 42 U.S.C. § 1988 . . . ."). In determining what amount of attorney fees is reasonable when § 1988 applies, the Supreme Court has held that a court should begin with the "lodestar" value, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court should "exclude from this initial fee calculation hours that were not reasonably expended." *Id.* at 434 (internal quotation marks omitted). But a court would be unable to apply the *Hensley* framework to the fee shifting provision of the IDEA if it were prohibited from reducing a fee award due to the application of subparagraph (G). The Sombergs' interpretation of subparagraph (G) is therefore contrary to how this court has construed the IDEA's fee-shifting provision "by analogy to 42 U.S.C. § 1988." *See Phelan*, 8 F.3d at 373. In sum, the district court correctly concluded that its finding that UCS unreasonably protracted the resolution of this litigation did not prohibit it from reducing the Sombergs' fee award to ensure that the overall award was reasonable.

### b.    *The district court did not abuse its discretion in reducing the Sombergs' fee award.*

When a district court provides "a clear and concise explanation of its reasons for the [attorney fees] award," we afford the district court's calculation of the lodestar value and any justifiable departure substantial deference. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Hensley*, 461 U.S. at 438). In the present case, the district court provided a clear and concise explanation of its reasons for reducing Alef's hourly rate to $220. First, UCS's counsel is experienced in litigating IDEA cases and charged an hourly rate between $200 and $220. Second, Alef is a solo practitioner, and solo practitioners in Michigan bill at a median hourly rate between $200 and $225.

The district court also provided a clear and concise explanation for reducing the number of hours to be reimbursed by 25%; i.e., that both parties were generally found to be inefficient in litigating the case. Moreover, the court explained that the number of hours that Alef billed struck the court as excessive because the facts "were relatively straightforward and undisputed." The

district court therefore did not abuse its discretion in reducing Alef's hourly rate and the number of hours to be reimbursed in determining a reasonable fee award.

### III.  CONCLUSION

For the various reasons set forth above, we **AFFIRM** all aspects of the district court's judgment in this case.