*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MICAH FIALKA-FELDMAN,

        *Plaintiff-Appellee,*

      *v.*

OAKLAND UNIVERSITY BOARD OF TRUSTEES,
GARY D. RUSSI, MARY BETH SNYDER,
LIONEL MATEN,

        *Defendants-Appellants.*

No. 10-1084

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-14922—Patrick J. Duggan, District Judge.

Argued: April 20, 2011

Decided and Filed: May 4, 2011

Before: SUTTON and KETHLEDGE, Circuit Judges; HOOD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Robert A. Boonin, BUTZEL LONG, Detroit, Michigan, for Appellants. Chris E. Davis, MICHIGAN PROTECTION & ADVOCACY, Lansing, Michigan, for Appellee. **ON BRIEF:** Robert A. Boonin, BUTZEL LONG, Detroit, Michigan, Regan S. Dahle, BUTZEL LONG, Ann Arbor, Michigan, for Appellants. Chris E. Davis, MICHIGAN PROTECTION & ADVOCACY, Lansing, Michigan, Veena V. Rao, MICHIGAN PROTECTION & ADVOCACY, Livonia, Michigan, for Appellee. Barbara Lee Kornblau, Grand Blanc, Michigan, for Amici Curiae.

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   In December 2009, Micah Fialka-Feldman, a continuing-education student with mild cognitive disabilities, obtained a permanent injunction ordering Oakland University to provide him with on-campus housing.  The University appealed.  In the meantime, Fialka-Feldman spent the 2010 spring semester living in the dormitory, completed the program and left the University with no plans of returning, all of which transformed a live controversy into a moot one.  We dismiss the appeal and vacate the unreviewed judgment of the district court.

I.

Fialka-Feldman is in his mid-twenties and has a history of cognitive impairments. In 2007, he began attending classes at Oakland University, located in Rochester, Michigan, through the OPTIONS program, which allows students with "mild disabilities . . . to continue their academic education in a college setting" by attending regular university courses and participating in student activities.  R.39-8 at 2.

To alleviate the challenges of a long commute, Fialka-Feldman applied for campus housing.  The University denied his application on the ground that he was "not an admitted Oakland University student."  R.37-11 at 2.

Fialka-Feldman filed this lawsuit in federal district court, claiming that the University discriminated against him based on his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, the Fair Housing Act, 42 U.S.C. § 3604, and the Rehabilitation Act, 29 U.S.C. § 794.  He sought injunctive relief, money damages and attorney's fees.

In December 2009, the court granted summary judgment to Fialka-Feldman, holding that the Rehabilitation Act required the University to accommodate his disability by waiving its policy limiting on-campus housing to students in degree-granting

programs. The court issued a permanent injunction, ordering the University to provide Fialka-Feldman with housing. It did not award damages.

In January 2010, the University appealed the injunction. Fialka-Feldman did not cross-appeal the court's rejection of his damages claim. The district court awarded Fialka-Feldman $101,676 in attorney's fees and granted the University's motion to hold the award in abeyance pending the outcome of this appeal. The University did not appeal the award of attorney's fees. Neither party urged this court to expedite the merits appeal.

In the interim, the University complied with the injunction, and Fialka-Feldman moved into a dormitory on January 4, 2010. That spring, Fialka-Feldman completed the OPTIONS program and moved out of the dormitory on April 27, 2010. He does not plan to enroll in any other programs at the University.

## II.

Article III of the United States Constitution empowers the federal courts to hear only "cases or controversies," U.S. Const. art. III, § 2, cl. 1, a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there. If events occur during the case, including during the appeal, that make it "impossible for the court to grant any effectual relief whatever to a prevailing party," the appeal must be dismissed as moot. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). Just such an event occurred here: What started as a disagreement with consequences for both parties became an abstract dispute with consequences for neither party when Fialka-Feldman left the OPTIONS program.

The only merits issue still in play is whether the district court properly ordered the University to provide Fialka-Feldman with on-campus housing. Once Fialka-Feldman completed his program at the University and once he signaled no intent to return, the injunction meant nothing to the University and required nothing of it. No one claims that the University must provide campus housing to non-students, which is what

Fialka-Feldman has become.    Any decision on appeal thus would not provide "meaningful relief" to either party.  *Id.*

Fialka-Feldman's request for money damages does not save the case.  He lost the point as a matter of law below and did not cross-appeal that aspect of the judgment.  The award of attorney's fees does not save the case either.  A yet-to-be-enforced award of "attorney's fees" does not suffice "to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990).

Neither is the case "capable of repetition, yet evading review."  *FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462 (2007).  Fialka-Feldman has finished the program and has no intention of returning to it.  University programs, whether through full-time enrollment or part-time enrollment, tend to last longer than the time it takes to obtain a trial court ruling and an appeal, and accordingly the courts generally have not applied the capable-of-repetition exception to them.  When Marco DeFunis challenged the University of Washington Law School's admission procedures (and was later admitted due to a lower court injunction), the Supreme Court held that his appeal became moot when he registered for his last quarter, and the Law School said he would "be awarded his J.D. degree . . . regardless of the outcome of this appeal." *DeFunis v. Odegaard*, 416 U.S. 312, 314–17 & n.2 (1974) (per curiam).  "[J]ust because this particular case did not reach the Court until the eve of the petitioner's graduation from Law School," the Court reasoned, "it hardly follows that the issue he raises will in the future evade review. . . . [T]here is no reason to suppose that a subsequent case attacking those procedures will not come with relative speed to this Court." *Id.* at 319.  The same could be said of this case.

The lower courts have marched in the same direction in other school-graduation cases. *See McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (dispute over high school basketball player's eligibility for upcoming season was not "capable of repetition" when player graduated and there was

"no reasonable expectation of another controversy over his eligibility"); *Russman v. Bd. of Educ.*, 260 F.3d 114, 119 (2d Cir. 2001) ("[T]he finality of graduation means that . . . the 'capable of repetition, yet evading review' exception is not available when the issue is students' rights and the complaining students have graduated from the defendant institution.").

Consistent with these cases, the "capable of repetition" exception does not spare this case from mootness. The key problem is that the "complaining party"—Feldman—will not "be subject to the same action again," converting any ruling on the merits into a purely advisory, dare we say academic, exercise. *McPherson*, 119 F.3d at 458.

Fialka-Feldman concedes that his case became moot on appeal, but the University does not. It invokes a "public interest" exception to the mootness doctrine, claiming that the federal courts may hear non-live disputes whenever the resolution of important legal questions will serve the public. But to state such a far-reaching proposition is to doubt it. The "case or controversy" requirement prohibits all advisory opinions, not just some advisory opinions and not just advisory opinions that hold little interest to the parties or the public. If advisory opinions "are ghosts that slay," Felix Frankfurter, *A Note on Advisory Opinions*, 37 Harv. L. Rev. 1002, 1007 (1924), it is hard to grasp why the risks associated with them would be ameliorated, as opposed to accentuated, when the public has a keen interest in the resolution of the issue. Matters of great public interest are precisely the kinds of issues that demand the federal courts to be most vigilant in this area—vigilant that the powers they exercise are powers the Constitution gives them and vigilant that they exercise those powers in disputes with the "clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument." *United States v. Fruehauf*, 365 U.S. 146, 157 (1961).

A stand-alone public interest exception to Article III has no meaningful pedigree. The Supreme Court has never recognized any such exception and in several instances

has refused to adopt one. "Although as a matter of Washington state law it appears that this case would be saved from mootness by 'the great public interest in the continuing issues raised by this appeal,' the fact remains that under Art. III even in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction." *DeFunis*, 416 U.S. at 316; *see Richardson v. Ramirez*, 418 U.S. 24, 36 (1974) ("While the Supreme Court of California may choose to adjudicate a controversy simply because of its public importance, and the desirability of a statewide decision, we are limited by the case-or-controversy requirement of Art. III to adjudication of actual disputes between adverse parties."); *Amalgamated Ass'n v. Wis. Emp't Relations Bd.*, 340 U.S. 416, 418 (1951).

The "[l]ower courts," too, "accept the rule that there is no explicit public-interest exception" to Article III in general or the mootness doctrine in particular. Wright et al., Federal Practice & Procedure, § 3533.9; *id.* at n.10 (collecting cases); *see, e.g.*, *Hickman v. Missouri*, 144 F.3d 1141, 1144 (8th Cir. 1998) ("[T]here is no such exception in [the] federal courts."); *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985) ("Although we recognize that the substantive issues are of considerable public interest, we believe that this alone does not impart Article III justiciability when there is no reasonable expectation that the wrong will be repeated."); *Alton & So. Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 463 F.2d 872, 880 (D.C. Cir. 1972) ("The court will not decide a moot case on the sole ground of public importance."); *cf. Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 549–50 (6th Cir. 2003) (rejecting as "not convincing" the district court's belief that "exceptional circumstances . . . warrant[ed] consideration of the constitutionality of [an] important medical policy").

The federal courts, it is true, have on occasion invoked the public interest in deciding whether to apply the "capable of repetition" exception to mootness. *See, e.g.*, *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 872 (9th Cir. 2007); *Texaco, Inc. v. Dep't of Energy*, 663 F.2d 158, 164 (D.C. Cir. 1980). But that is a distant cry from a freestanding public-interest exception to this rule or to any other justiciability requirement.

In arguing that there is a public-interest exception to the mootness doctrine, the University relies on just one case, *Big Rivers Electric Corp. v. EPA*, 523 F.2d 16 (6th Cir. 1975). There, an electricity company challenged the EPA's disapproval of a state regulation, after which the state changed the regulation. We held that the case was not moot because it was "capable of repetition, yet evading review," then added that the "public interest" in the case was "obvious" since "[t]here is a subsisting controversy between the petitioners and EPA over the authority of . . . that agency." *Id.* at 19.

One of two things is true about *Big Rivers*. It is a case that invoked the "public interest" in applying the "capable of repetition" exception. Or it amounts to inscrutable *dicta* about the role of the public interest in addressing moot cases. Either way, it does not *sotto voce* establish a new (and novel) exception to Article III. In the thirty-six years since *Big Rivers*, we have never invoked the decision as creating a free-standing public interest exception to the mootness doctrine. Neither has any other federal court of appeals.

Most *state courts*, we recognize, have "public interest" exceptions to their mootness, standing and ripeness doctrines, and in most instances permit their appellate courts to entertain appeals about issues of "continuing public importance" after the cases otherwise become moot on appeal. *See, e.g.*, *Mead v. Batchlor*, 460 N.W.2d 493, 496 (Mich. 1990); *Zoning Bd. of Adjustment v. DeVilbiss*, 729 P.2d 353, 356 n.4 (Colo. 1986); *Rush v. Ray*, 332 N.W.2d 325, 326 (Iowa 1983); *see also Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1141 (9th Cir. 2005) (en banc) (Fletcher, J., dissenting) ("[A]lmost every state in the union has an exception for cases on appeal that raise questions of 'continuing public importance.'") (collecting cases). *But see Collins v. Lombard Corp.*, 508 S.E.2d 653, 655 (Ga. 1998); *Loisel v. Rowe*, 660 A.2d 323, 332 (Conn. 1995). Yet this reality reflects an essential difference between the two court systems—that the federal courts are courts of limited jurisdiction and that the state courts are courts of general jurisdiction. Article III does not constrain the state courts. Many state courts thus not only have authority to relax their rules on mootness, but they also permit advisory opinions and indeed some State constitutions explicitly provide for

them. *See, e.g.*,  R.I. Const. art. 10, § 3; *In re Ops. of the Justices to the Senate*, 802 N.E.2d 565 (Mass. 2004); *Op. of the Justices of the Supreme Judicial Court*, 815 A.2d 791 (Me. 2002); *In re Mun. Suffrage to Women*, 36 N.E. 488, 492 (Mass. 1894) (Holmes, J.).

When a case becomes moot on appeal, as this one did, "the established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 484–85 (6th Cir. 2004); *see United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950).  The idea is that when a party seeks relief from "the merits of an adverse ruling, but is frustrated by the vagaries of circumstance" from obtaining an appellate ruling, it makes little sense to compel the losing party to live with the precedential and preclusive effects of the adverse ruling without having had a chance to appeal it.  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).  That is particularly so, though not exclusively so, when "mootness results from unilateral action of the party who prevailed below."  *Id.*

At least one, if not both, of these circumstances apply here.  Through no fault of its own, the University no longer can pursue this appeal, as Fialka-Feldman has completed the program.  While it would be strange to "blame" Fialka-Feldman for completing the program, it is just as clear that the mooting of this case did not stem from any fault or unilateral action of the University, making it appropriate to "clear[] the path for future relitigation of the issues."  *Id.* at 22.

But, Fialka-Feldman responds, the University could have expedited the appeal, heading off the risk that the dispute would end with his completion of the program.  Yet the failure to expedite a case is not the kind of fault or unilateral action to which the cases refer.  The norm in appellate litigation is *not* to accelerate appeals, making it strange to penalize the University for doing what most litigants do, including we might add what Fialka-Feldman did:  allowing the case to take its normal course through the appellate process.  That the University took one 28-day extension does not change the

calculus, as this too is hardly an unusual, or blameworthy, action by an American lawyer. None of these actions (or inactions) rises to the level of a party that has "slept on its rights." *Munsingwear*, 340 U.S. at 41. The "vagaries of circumstance" mooted this case, and the proper course of action is vacatur. *Bancorp*, 513 U.S. at 25.

Fialka-Feldman also invokes our decision in *Constangy, Brooks & Smith v. NLRB*, where the district court ordered the NLRB to produce documents in response to a plaintiff's FOIA request. 851 F.2d 839 (6th Cir. 1988). After losing its emergency motion to stay the order, the NLRB complied but also appealed. Both parties moved to dismiss the appeal as moot, and we agreed to do so. *Id.* at 841. We chose to leave the lower court decision undisturbed, holding that "[i]n the instant case, the appeal was mooted because the NLRB complied in toto with the district court's production order." *Id.* at 842.

*Constangy* makes no difference to this case. The losing party in *Constangy* mooted the case by "compl[ying] in toto" with the district court's order. Once the NLRB turned over its documents, there was no relief to grant. Here, the University's compliance with the injunction did nothing by itself to moot the case. Even after the University permitted Fialka-Feldman to move into a dormitory, there was a possibility of meaningful relief, as we could have reversed the district court and allowed the University to remove Fialka-Feldman from the dormitory. This case became moot not upon compliance with the injunction but upon Fialka-Feldman's completion of the program, making vacatur appropriate. *See, e.g.*, *Harper v. Poway Unified Sch. Dist.*, 549 U.S. 1262 (2007) (per curiam) (decision denying injunctive relief against high school vacated after plaintiff graduated); *Cook v. Colgate Univ.*, 992 F.2d 17, 20 (2d Cir. 1993) (injunction against university vacated when plaintiffs would "graduate before the district court's order [could] affect them").

The lingering attorney's fees award does not change things. By vacating the district court's merits decision (a distinct order from the fee award), we also do not necessarily disturb Fialka-Feldman's status as a "prevailing party" for purposes of

attorney's fees.  *See McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010).  We leave it in the good hands of the district judge to decide how to move forward with the award.

III.

For these reasons, we dismiss the appeal as moot, vacate the judgment and remand the case to the district court.