RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CHAD THOMPSON; WILLIAM T. SCHMITT; DON
KEENEY,

                 *Plaintiffs-Appellants*,

    *v.*

RICHARD MICHAEL DEWINE, in his official capacity as
the Governor of Ohio; STEPHANIE B. MCCLOUD, in her
official capacity as Director of Ohio Department of
Health; FRANK LAROSE, in his official capacity as
Ohio Secretary of State,

                 *Defendants-Appellees*.

&gt;    No. 21-3514

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:20-cv-02129—Edmund A. Sargus, Jr., District Judge.

Decided and Filed:  August 6, 2021

Before:  SUTTON, Chief Judge; McKEAGUE, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Mark R. Brown, CAPITAL UNIVERSITY LAW SCHOOL, Columbus, Ohio, for
Appellants.  Benjamin M. Flowers, ZACHERY P. KELLER, OFFICE OF THE OHIO
ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

───────────────

## AMENDED OPINION

───────────────

PER CURIAM.  This is the third time we have seen this case.  Plaintiffs are three
Ohioans who, during the 2020 election, tried to get initiatives to decriminalize marijuana on local

ballots. To do so, they had to comply with Ohio's ballot-access laws. Those laws impose various requirements on an initiative's proponents, including submitting a petition with a minimum number of ink signatures witnessed by the petition's circulator.

Plaintiffs say the laws, as applied during the COVID-19 pandemic, made it too difficult for them to get any of their initiatives on 2020 ballots. So they sued for declaratory and injunctive relief. But plaintiffs tied their requests for relief exclusively to the November 2020 election. That election has come and gone—and with it the prospect that plaintiffs can get any of the relief they asked for. This case is thus moot. We **VACATE** the district court's order dismissing plaintiffs' complaint and **REMAND** with instructions to dismiss the case as moot.

I.

We need not restate the facts at length. *See Thompson v. DeWine*, 461 F. Supp. 3d 712 (S.D. Ohio), *stayed*, 959 F.3d 804 (6th Cir.) (*Thompson I*), *rev'd*, 976 F.3d 610 (6th Cir. 2020) (*Thompson II*). The short of it is this: Plaintiffs are three Ohio voters. They regularly circulate petitions to get initiatives on local and statewide ballots. For the 2020 election cycle, plaintiffs hoped to place initiatives on municipal ballots to decriminalize marijuana.

Before an initiative finds its way onto a local ballot, its proponents must circulate a petition. Ohio Rev. Code Ann. § 731.28. The petition must get signatures from at least ten percent of the number of electors who voted for governor in the municipality's previous election. *Id.* And those signatures must be original and in ink, and the petition's circulator must witness them. *Id.* § 3501.38. Once a petition has enough qualifying signatures, the circulator must submit it to the Secretary of State at least 110 days before the election. *Id.* § 731.28.

Soon after plaintiffs filed proposed initiatives for November 2020 ballots, Ohio declared a state of emergency because of COVID-19 and ordered Ohioans to stay at home. As a result, plaintiffs found it harder than usual to gather signatures for their initiative petitions. So they sued Governor Mike DeWine and other state officials for declaratory and injunctive relief. They allege that, because the pandemic and emergency orders made signature gathering difficult, "Ohio's ballot-access requirements for popular measures proposed for Ohio's November 3, 2020 election violate" the First and Fourteenth Amendments. (R. 1, Compl. at 16–17, PID 16–17.)

And they asked the district court to "immediately place" their initiatives "on local November 3, 2020 election ballots without the need for supporting signatures." (*Id.* at 18, PID 18.) If that failed, they also asked the court to reduce the number of signatures they needed to qualify for the ballot, extend the deadline for submitting petitions, and order the state to develop a way for voters to sign petitions electronically.

The district court enjoined the ink and witness requirements, extended the deadline for submitting petitions, and ordered the state to accept electronic signatures. *Thompson*, 461 F. Supp. 3d at 739–40. We stayed that injunction, *Thompson I*, 959 F.3d at 804, and then reversed it, *Thompson II*, 976 F.3d at 614. After plaintiffs unsuccessfully sought review in the Supreme Court, defendants moved to dismiss plaintiffs' complaint, claiming it was moot and barred by the Eleventh Amendment. The district court, relying on our opinions in *Thompson I* and *II*, dismissed the case on its merits after holding that it was not moot. Plaintiffs appeal, and we review the decision de novo. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

II.

Under Article III of the Federal Constitution, we can only decide "Cases" or "Controversies." U.S. Const. art. III, § 2. So we adjudicate "only genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006). Thus, "[i]f 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' then the case is moot and the court has no jurisdiction." *Id.* (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).

A.

This case is moot. Plaintiffs request two types of relief, injunctive and declaratory. But unlike many election cases, plaintiffs do not challenge Ohio's ballot-access laws standing alone. *See Common Sense Party v. Padilla*, 834 F. App'x 335, 336 (9th Cir. 2021) (COVID-related challenge to a ballot-access law was moot because plaintiff did not challenge "the constitutionality of the provision itself or its constitutionality as applied to [plaintiff] outside this context"); *cf. Storer v. Brown*, 415 U.S. 724, 727 (1974).

Instead, plaintiffs tie all their requested relief to the November 2020 election, COVID-19, and Ohio's stay-at-home orders. *See Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 560 (6th Cir. 2021) (case was moot when plaintiff's injury and motion for a preliminary injunction were "inextricably tied to the COVID-19 pandemic, a once-in-a-century crisis"). Plaintiffs' complaint was one to "declare unconstitutional, enjoin and/or modify" Ohio's ballot-access laws so that their initiatives could be included "on Ohio's November 3, 2020 general election ballot." (R. 1, Compl. at 1, PID 1.)  Why?  Because "the current public health emergency caused by COVID-19 and defendant DeWine's and defendant Acton's emergency orders effectively shutting down the State" made it hard for them to gather signatures. (*Id.*)  So they asked the court to "immediately place" their initiatives "on local November 3, 2020 election ballots." (*Id.* at 18, PID 18.)  And in case they didn't get that relief, plaintiffs also asked the court to enjoin enforcement of Ohio's ballot-access laws and to unilaterally modify them—but again, only "for Ohio's November 3, 2020 general election," and only because COVID-19 and Ohio's stay-at-home orders made signature gathering too difficult. (*Id.* at 14, PID 14, 18–19, PID 18–19.)

Without a time machine, we cannot go back and place plaintiffs' initiatives on the 2020 ballot.  So plaintiffs' first request for injunctive relief is moot.  *See Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005); *Ariz. Green Party v. Reagan*, 838 F.3d 983, 987 (9th Cir. 2016) ("The 2014 election has come and gone, so we cannot devise a remedy that will put the Green Party on the ballot for that election cycle.").  And plaintiffs' alternative requests for an injunction, which they tied *specifically* to the 2020 election, also became moot when the election passed. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th at 560; *Operation King's Dream v. Connerly*, 501 F.3d 584, 591 (6th Cir. 2007); *Padilla*, 834 F. App'x at 336 (noting in a COVID-19 election case that "the occurrence of an election moots relief sought with respect to that election cycle").

Plaintiffs' request for declaratory relief is likewise moot.  To determine whether a request for declaratory relief is moot, we ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Preiser v.*

*Newkirk*, 422 U.S. 395, 402 (1975) (emphasis altered) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

No such controversy exists for plaintiffs' declaratory relief claim. Like their demands for injunctive relief, plaintiffs tie their declaratory relief request specifically to the 2020 election. They ask the court to declare that Ohio's ballot-access laws—as applied to "measures proposed for local November 3, 2020 elections in Ohio"—violate the Constitution "in light of the current public health emergency caused by the COVID-19 pandemic and the executive orders requiring that Ohio citizens stay at home and shelter in place." (R. 1, Compl. at 19, PID 19.) But those orders are no longer in place, and the election is over. (*See Rescinded Public Health Orders*, OHIO DEP'T OF HEALTH, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/public-health-orders/public-health-orders-rescinded (last accessed July 23, 2021, 9:45 AM)). So no "substantial controversy" of "immediacy and reality" exists. *See Preiser*, 422 U.S. at 402; *see also* 28 U.S.C. § 2201 (requiring "a case of actual controversy" before a court can issue declaratory relief).

Plaintiffs sought specific relief. They challenged Ohio's ballot-access laws as applied to the unique circumstances existing during the 2020 election. But because of intervening events— the passing of the election and the rescission of Ohio's stay-at-home orders and emergency declaration—we cannot give plaintiffs what they ask for. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (noting that a case is moot when the court cannot "grant any effectual relief"); *Maryville Baptist Church, Inc. v. Beshear*, 977 F.3d 561, 564 (6th Cir. 2020). Thus, "in view of the limited nature of the relief sought, we think the case is moot because the . . . election is over." *Brockington v. Rhodes*, 396 U.S. 41, 43 (1969).

B.

The capable-of-repetition-yet-evading-review exception to mootness does not apply here. *See Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). Plaintiffs point out that they are trying to get initiatives on the ballot for local 2021 elections. And because COVID-19 persists, the threat that Ohio will again implement stay-at-home orders keeps this case alive.

The capable-of-repetition exception features regularly in election disputes. *See In re 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016). To be capable of repetition but evading review, a dispute must satisfy a two-pronged test. First, the challenged action must be too short in duration for the parties to fully litigate it before it becomes moot. And second, there must be "a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life*, 551 U.S. at 462 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). We can assume the first prong is met here, as it commonly is in election cases. *See Lawrence*, 430 F.3d at 371.

But plaintiffs falter on the second prong. To be sure, we relax our inquiry at this step for election cases. *See Memphis A. Philip Randolph Inst.*, 2 F.4th at 560. So plaintiffs need not show that the same controversy will recur "down to the last detail." *Wis. Right to Life*, 551 U.S. at 463. In other words, "[t]o be capable of repetition, 'the chain of potential events does not have to be air-tight or even probable.'" *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560 (quoting *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016)). Still, "a mere physical or theoretical possibility" that the events prompting the suit will come back is not enough. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). So a case "is not capable of repetition if it is based on a unique factual situation." *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560; *see also Libertarian Party of Ohio*, 462 F.3d at 584.

If any case is "based on a unique factual situation," this one is. *See Memphis A. Philip Randolph Inst.*, 2 F.4th at 560. As pled, plaintiffs' claims "are inextricably tied to the COVID-19 pandemic." *Id.* A once-in-a-lifetime global pandemic prompted unprecedented stay-at-home orders right as election machinery was gearing up. The pandemic dissuaded the public from going outdoors, interacting with strangers, and gathering in groups—the situations plaintiffs say they rely on to solicit signatures. But the situation today differs markedly from a year ago. "Fortunately, because of advancements in COVID-19 vaccinations and treatment since this case began, the COVID-19 pandemic is unlikely to pose a serious threat during the next election cycle." *Id.* And so "[t]here is not a reasonable expectation" that plaintiffs "will face the same burdens" that they did in 2020. *Id.*

Plaintiffs insist that "[t]here is not only a likelihood of recurrence, there is recurrence here." (Appellant Br. at 38.) They say COVID-19 remains a "full blown crisis" hampering their efforts to gather signatures for 2021 initiatives. (*Id.*) But we recently rejected a similar argument in another election case, citing advancements in the COVID-19 vaccine and treatment. *See Memphis A. Randolph Institute*, 2 F.4th at 560–61; *see also People Not Politicians Or. v. Fagan*, No. 6:20-cv-01053-MC, 2021 WL 2386118, at *3 (D. Or. June 10, 2021).

Plaintiffs also insist that Ohio's COVID restrictions not only hampered their ability to gather signatures for the 2020 election but also carried over to the 2021 election. Plaintiffs claim that they could have used "[s]ignatures collected between March and July of 2020 . . . to qualify initiatives for the November 2, 2021 ballot." (Appellant Br. at 40.) Even if that's true, this is the first time plaintiffs are saying so. *See Operation King's Dream*, 501 F.3d at 592 ("Because the Plaintiffs present this argument for the first time on appeal, we decline to address it."). All along, plaintiffs have claimed Ohio violated their constitutional rights as it relates to the November 2020 election and the emergency surrounding it. "Plaintiffs' decision on appeal to alter the relief sought and transform the cause of action further underscores that their appeal is moot." *Id.*

Finally, plaintiffs fall back on their fear that a future pandemic could wreak similar havoc on elections. This speculation does not get the job done. *See Speer v. City of Oregon*, 847 F.2d 310, 311–12 n.3 (6th Cir. 1988) ("Plaintiff cannot avoid mootness by engaging in speculation that at some point in the future she may move and then return and seek to run for City Council and again be subjected to the residency requirement."); *People Not Politicians*, 2021 WL 2386118, at *3 (rejecting a COVID election challenge as moot in part because plaintiffs' argument "that the circumstances that led to Plaintiffs' as-applied challenge following the 2020 election cycle 'could recur' is highly speculative"). Because of the specific relief sought and the unique harm alleged, this is not a case when "the controversy" prompting the lawsuit "almost invariably will recur with respect to some future" ballot initiatives. *See Lawrence*, 430 F.3d at 372; *see also Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 932 (6th Cir. 2013).

III.

Ohioans had to make sacrifices as the state responded to COVID-19. We appreciate the difficulties the virus posed to plaintiffs' efforts to gather signatures for their initiatives. But the event for which plaintiffs sought relief has passed. So their claims are now moot. We **VACATE** the district court's order dismissing plaintiffs' complaint and **REMAND** with instructions that the case be dismissed as moot. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).