NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0062n.06

Case Nos. 20-1611/1650

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MIDWEST INSTITUTE OF HEALTH, PLLC, dba Grand Health Partners; WELLSTON MEDICAL CENTER, PLLC; PRIMARY HEALTH SERVICES, PC; and JEFFERY GULICK, | ) ) ) ) ) |  |
|  | ) |  |
|     Plaintiffs-Appellees, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan (20-1611); DANA NESSEL, in her official capacity as Attorney General of the State of Michigan (20-1650); and ELIZABETH HERTEL, in her official capacity as Director of the Michigan Department of Health and Human Services (20-1611), | ) ) ) ) ) ) ) ) ) |  |
|  | ) |  |
|     Defendants-Appellants. | ) ) |  |

**FILED**
Feb 02, 2022
DEBORAH S. HUNT, Clerk

BEFORE: SUTTON, Chief Judge; CLAY and McKEAGUE, Circuit Judges.

**SUTTON, Chief Judge.** Some appeals arising from the COVID-19 pandemic involve hard questions of States' power. These do not, as they are now moot.

On March 10, 2020, the Michigan Department of Health diagnosed the first two cases of COVID-19 in the State. That same day, Governor Gretchen Whitmer issued an executive order

declaring a state of emergency. A volley of executive orders soon followed. One required postponement of "non-essential medical and dental procedures." R.1-4 at 2. Another restricted Michigan residents from leaving home to seek medical care unless "necessary to address a medical emergency or to preserve the health and safety of a household or family member." R.1-6 at 5. Robert Gordon, who then served as the Director of the Michigan Department of Health, issued an order authorizing local law enforcement and health department officials to enforce these orders.

Governor Whitmer extended the emergency declaration on April 30. On May 7, she reaffirmed the stay-at-home order and the ban on non-essential medical care.

The plaintiffs objected to these ongoing restrictions. Healthcare providers Midwest Institute of Health, Wellston Medical Center, and Primary Health Services found themselves "unable to provide preventive medical care" and faced "permanent shuttering" of their businesses. R.1 at 6. Jeffery Gulick, the fourth plaintiff, had to postpone scheduled knee-replacement surgery and could not obtain follow-up care for a previous operation. Together they sued Governor Whitmer, Attorney General Dana Nessel, and Director Gordon, who has since been replaced in his position by Director Elizabeth Hertel. *See* Fed. R. App. P. 43(c)(2). The complaint included six counts: four federal claims and two counts seeking declaratory judgments on the grounds that Governor Whitmer violated state law. They sought relief from three specific orders issued by the officials.

The plaintiffs moved for a preliminary injunction. The Michigan officials opposed that relief for a slew of reasons: mootness, abstention, a low likelihood of success on the merits, a failure to show irreparable harm, and the other stay factors. They did not raise sovereign immunity.

The district court held a hearing in which it proposed certifying two issues to the Michigan Supreme Court: (1) whether Governor Whitmer exceeded her statutory authority when she

2

extended the declaration of emergency, and (2) whether the state statutes on which the Governor relied violated the Michigan Constitution. The plaintiffs supported certification. The state officials opposed it. At the end of the hearing, the court certified the issues.

The next day, the Michigan officials filed a motion for reconsideration. They contended that the state law declaratory judgment counts could not proceed because the Eleventh Amendment barred the district court from considering them. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The district court denied the motion. It held that the state officials had waived any immunity arguments by litigating the issues and by waiting to raise the Eleventh Amendment question until the court proposed to certify the state law questions to the state court.

The Michigan officials appealed the district court's sovereign immunity ruling to our court. Because separate counsel represents the Attorney General, the officials filed two appeals.

Meanwhile, in October 2020, the Michigan Supreme Court answered the certified questions. The Court held that the Governor's orders "lack any basis under Michigan law." *In re Certified Questions*, 958 N.W.2d 1, 6 (Mich. 2020) (plurality opinion); *id.* at 32 (Viviano, J., concurring in part). In response, the Michigan officials rescinded the relevant orders.

The plaintiffs moved to dismiss the appeals in our court on mootness grounds.

Article III permits the federal courts to hear only "cases" or "controversies." U.S. Const. art. III, § 2. The constraint applies from "cradle" to "grave," demanding that a live issue exist at every stage of litigation. *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). A dispute remains viable only so long as "the parties have a concrete interest" in its outcome. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation omitted). Otherwise, we must dismiss an appeal as moot if there is no way to grant "effectual relief." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

3

These appeals are moot. The state law counts in the complaint no longer present live issues because each one sought a declaratory judgment with respect to specific orders, orders the Governor and Director withdrew after the Michigan Supreme Court ruled. Because "those orders are no longer in place" and the state court's ruling leaves no reason to think state officials will reinstate them, the state law declaratory judgment counts are moot. *Thompson v. DeWine*, 7 F.4th 521, 524–25 (6th Cir. 2021) (per curiam); *see also League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 843 F. App'x 707, 709–10 (6th Cir. 2021); *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at \*3–4 (6th Cir. Jan 19, 2022).

Taking the declaratory judgments off the table moots these appeals. Without the state law counts, the state officials no longer run the risk that the district court will grant relief on those counts. Because the basis for the officials' invocation of sovereign immunity has evaporated, so too has their basis for appealing its denial. That the parties who originally sought the declaratory judgments no longer see the need for them is as good an indication as any that those claims are moot.

Resisting this conclusion, the Michigan officials raise the "specter of the district court awarding" relief on the state law claims in the future. No. 20-1611 Doc. 32 at 8. But that cannot happen with moot claims. Any suggestion that the Governor might reenact materially identical orders withers under the light of the Michigan Supreme Court's ruling that she may not. Article III requires more than a "theoretical possibility" that a concrete case will reappear. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).

The Michigan officials next claim a preference for dismissing the state law counts on sovereign immunity grounds rather than for mootness. But they never offer a reason why they have a right to the former over the latter. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585

(1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."). The real-world effects of each flavor of dismissal are identical in this instance. Each dismissal would be without prejudice. *Ernst v. Rising*, 427 F.3d 351, 366–67 (6th Cir. 2005) (en banc). What is more, the state officials moved for dismissal on mootness grounds well before they raised sovereign immunity. They cannot object with a straight face if the federal courts grant their original request. *Cf. Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006).

The Michigan officials also contend that the denial of sovereign immunity led the district court to certify state law questions improperly. But whether they are right or wrong on that score, we cannot put that toothpaste back in the tube. Even if certification harmed the officials, that does not mean we can grant "effectual relief" now. *Church of Scientology*, 506 U.S. at 12.

That leaves attorney's fees. The denial of sovereign immunity, the Michigan officials allege, might allow the plaintiffs to recover fees under 42 U.S.C. § 1988. But they cannot rely on the threat of fees alone. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). The bare possibility that the district court might enter such an award does not give the Michigan officials a "direct stake" in the litigation sufficient to create a case or controversy under Article III. *Diamond v. Charles*, 476 U.S. 54, 69–71 (1986). And the reality that the officials no longer have meaningful skin in the game means these appeals are moot. *Sumpter v. Wayne County*, 868 F.3d 473, 490 (6th Cir. 2017) (recounting the "common refrain" that "mootness is just standing set in a time frame" (quotation omitted)).

The Michigan officials' final effort to keep these appeals alive is a resort to the law-of-the-case doctrine. Pointing to an unpublished interlocutory order earlier in the case initially denying the plaintiffs' motion to dismiss, they argue we have already settled the mootness question. But

mootness is a time-sensitive question. *Thompson*, 7 F.4th at 523–24. A decision by a motions panel to deny a motion to dismiss on mootness grounds does not bar the merits panel from addressing the point at that later stage of the case.

We dismiss the appeals for lack of jurisdiction, vacate the district court's order denying reconsideration of its decision to certify, and remand the case to the district court with instructions to dismiss the state law counts as moot.

**CLAY, Circuit Judge**, concurring in the judgment. I agree with the majority that the state law claims must be dismissed. I also agree that the case is likely moot. However, I diverge from the majority on whether mootness is the preferable means for resolving this case. In my opinion, the Eleventh Amendment provides a more appropriate means to reach the same end.

The Eleventh Amendment provides a preferable framework for deciding this case. Although courts are largely free to decide the order in which they address the issues presented on appeal, when faced with the option of disposing of a case on mootness grounds or jurisdictional grounds, courts tend to prioritize the jurisdictional issue. *See, e.g.*, *J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008). Additionally, to dismiss this case as moot could potentially subject the state to constitutionally dubious attorneys' fees. As the majority correctly points out, a dispute over attorneys' fees cannot save this case from mootness; however, such dispute is relevant when determining the most appropriate grounds for dismissal.

Turning, then, to the question of whether the district court erred in denying Defendants' claim of immunity, I believe it did. State officials can be found to have impliedly waived Eleventh Amendment immunity if their conduct clearly indicates an intent to waive such immunity. *Lawson v. Shelby Cty., TN*, 211 F.3d 331, 334 (6th Cir. 2000). An "appearance in court to present certain defenses, such as a statute of limitations argument, is not a defense on the merits indicating waiver of immunity." *Boler v. Early*, 865 F.3d 391, 410 (6th Cir. 2017).

In the first 30 days of this case, over 2,000 pages of briefing, exhibits, and court orders were filed. And while Defendants did not raise the Eleventh Amendment immunity argument in their earliest briefs, they first raised the argument merely 21 days after the complaint was filed. Admittedly, Defendants did engage in some litigation before fully briefing their Eleventh

Amendment argument; however, participation in some litigation does not necessarily waive Eleventh Amendment immunity. *Id.* at 411.

In every pleading filed up to and including this appeal, Defendants have challenged whether federal courts may exercise jurisdiction. They raised the Eleventh Amendment immunity defense before any discovery commenced. The district court even noted that the case "has not lingered on the Court's docket for months, nor has it proceeded through discovery or extensive motion practice." (Order Den. Defs.' Mot. for Recons., R. 42, Page ID # 2103.) In sum, the record simply does not demonstrate a clear intent to waive immunity. *Lapides v. Bd. Of Regents of Univ. Sys. Of Georgia*, 535 U.S. 613, 620 (2002).

The district court also faulted Defendants for not raising the Eleventh Amendment immunity defense until after they received the adverse ruling. This is not true. In no less than three instances, Defendants Whitmer and Gordon explicitly invoked the Eleventh Amendment prior to the motion for reconsideration. In fact, five days before the adverse ruling, Defendants stated, "Plaintiffs' claims also fail for lack of standing, for lack of ripeness, *and by virtue of the immunity afforded by the Eleventh Amendment*." (Br. in Support of Defs.' Mot. to Dismiss, R. 35-1, Page ID # 1783 (emphasis added).) Thus, this basis for the district court's holding was clearly erroneous.

For these reasons, I would hold Defendants are entitled to Eleventh Amendment immunity, vacate the order denying Defendants' motion for reconsideration, and remand with instructions to dismiss the state law claims for lack of jurisdiction.