NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0381n.06

No. 22-1232

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 22, 2022
DEBORAH S. HUNT, Clerk

KIMBERLY BEEMER; ROBERT JOSEPH MUISE,

      Plaintiffs-Appellants,

v.

GRETCHEN WHITMER, in her official capacity as Governor for the State of Michigan; DANA NESSEL, in her official capacity as the Attorney General for the State of Michigan,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; DONALD and MURPHY, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** We are once again faced with legal challenges to the executive orders issued by Michigan Governor Gretchen Whitmer during the global COVID-19 pandemic. Like most states during the pandemic, the State of Michigan issued a stay-at-home order to combat the opening surge of the virus. The order mandated a temporary suspension of all activities deemed not essential to sustain or protect life. Among those activities were extended family gatherings, recreational travel within the state, and the operation of firearm stores. Alleging several constitutional deprivations, two Michigan residents, Kimberly Beemer and Robert Muise, brought suit against Whitmer and other state officials to block the order. Eight days later, Whitmer rescinded the order, and the district court terminated the action as moot. On

appeal, the plaintiffs assert two well-known (and, unfortunately for them, well-litigated) exceptions to the mootness doctrine. For the following reasons, we affirm.

## I.

On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in the state. That same day, Governor Whitmer declared a "state of emergency" pursuant to the Emergency Powers of the Governor Act of 1945 (the "EPGA") and the Emergency Management Act of 1976 (the "EMA"). Over the following weeks, the number of positive cases surged. By April 8, 2020, the state had reported 20,346 confirmed cases of COVID-19 and 959 deaths from it.

On April 9, 2020, Whitmer issued Executive Order 2020-42 ("EO 2020-42"), the second iteration of her "Stay Home, Stay Safe" order.[1] She again cited the EPGA and the EMA as authority. The stated purpose of EO 2020-42 was "[t]o suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, and to avoid needless deaths[.]" R. 25-1, Page ID#: 419.

The order provided, in pertinent part:

2. Subject to the exceptions in section 7 of this order, all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited.

. . .

7. Exceptions.

(a) Individuals may leave their home or place of residence, and travel as necessary:
   (1) To engage in outdoor physical activity, consistent with remaining at least six feet from people from outside the individual's household. Outdoor physical

---

[1] Whitmer issued the first iteration of her "Stay Home, Stay Safe" order, Executive Order 2020-21, seventeen days prior on March 23, 2020.

2

      activity includes walking, hiking, running, cycling, kayaking, canoeing, or other similar physical activity[.]
      (2)  To perform their jobs as critical infrastructure workers[.]
              . . .
      (5)  To perform tasks that are necessary to their health and safety, or to the health and safety of their family or household members (including pets).
              . . .
      (6)  To obtain necessary services or supplies for themselves, their family or household members, their pets, and their vehicles.
              . . .
  (b)  Individuals may also travel:
      (1)  To return to a home or place of residence from outside this state.
      (2)  To leave this state for a home or residence elsewhere.
      (3)  Between two residences in this state, through April 10, 2020. After that date, travel between two residences is not permitted.
              . . .
  (c)  All other travel is prohibited, including all travel to vacation rentals.

*Id.* at Page ID#: 419-22. The order took effect on "April 9, 2020 at 11:59 pm" and, by its terms, "continue[d] through April 30, 2020 at 11:59 pm." *Id.* at Page ID#: 427. However, Whitmer avowed to "evaluate the continuing need for this order prior to its expiration." *Id.* Of particular importance, Whitmer would consider "(1) data on COVID-19 infections and the disease's rate of spread; (2) whether sufficient medical personnel, hospital beds, and ventilators exist to meet anticipated medical need; (3) the availability of personal protective equipment for the health-care workforce; (4) the state's capacity to test for COVID-19 cases and isolate infected people; and (5) economic conditions in the state." *Id.*

As residents of Michigan, the plaintiffs found themselves directly within the scope of these provisions; Kimberly Beemer had to cease all recreational travel to her in-state, lake cottage, and Robert Muise could no longer patronize local gun shops and ranges. On April 15, 2020, two weeks after the issuance of EO 2020-42, the plaintiffs brought suit against Whitmer and other state officials, alleging that the restrictions imposed by EO 2020-42 violated several constitutional rights, including those under the Due Process Clause, Equal Protection Clause, First Amendment,

and Second Amendment. They sought both a declaratory judgment and permanent injunctive relief from the order.

On April 24, 2020, Whitmer issued Executive Order 2020-59 ("EO 2020-59") to rescind EO 2020-42. When the plaintiffs continued to push forward with their claims, the Michigan officials moved to dismiss the action on mootness grounds. During the pendency of the motion, the Supreme Court of Michigan held that the EPGA violated the nondelegation doctrine of the Michigan Constitution and concluded that the EMA could not provide a basis to issue executive orders relating to the COVID-19 pandemic after April 30, 2020. *See In re Certified Questions from the U.S. Dist. Ct., W. Dist. of Mich., S. Div.*, 958 N.W.2d 1 (Mich. 2020). This decision, coupled with the governor's recission of EO 2020-42, provided the district court reason to dismiss both the motion and the complaint as moot. This timely appeal followed.

## II.

"Article III of the United States Constitution limits the federal judicial power to 'Cases' and 'Controversies.'" *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 395 (6th Cir. 2020) (citing U.S. Const. art. III, § 2, cl. 1). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). Thus, "[i]f events occur during the case . . . that make it 'impossible for the court to grant any effectual relief whatever to a prevailing party,' the [matter] must be dismissed as moot." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). "We review de novo a district court's decision regarding mootness." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001).

On April 24, 2020, Whitmer issued a new executive order, EO 2020-59, that lifted the stay-at-home order. The parties stipulated that EO 2020-59 did not prohibit the same activities that formed the basis of their complaint. And the district court found that "the Michigan Supreme Court's ruling eliminated all reasonable possibilities that Whitmer could extend the state of emergency and reinstitute the restrictions about which Plaintiffs complain[ed]." R. 47, Page ID#: 1336. Accordingly, the court determined that it could not grant any effectual relief to the plaintiffs, and "there no longer exist[ed] a 'substantial controversy . . . *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" *Id.* at Page ID#: 1336-37 (emphasis in original) (citing *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021)). While the plaintiffs do not dispute these factual findings, they contend that two exceptions can salvage their claims: (1) capable of repetition yet evading review and (2) voluntary cessation.

The plaintiffs are up against an insurmountable wealth of case law. We first explored these issues in *League of Independent Fitness Facilities and Trainers, Inc. v. Whitmer*, 843 F. App'x 707 (6th Cir. 2021). In that case, a trade organization for fitness facilities challenged executive orders mandating the closure of indoor gyms. However, on appeal, the parties agreed that two subsequent events rendered the matter moot. *Id.* at 709. First, the governor had issued a new executive order that lifted the prior restrictions on indoor fitness facilities, and therefore, we could not grant any effectual relief. *Id.* Second, "[e]ven if [the governor] wanted to reenact the challenged executive orders, the Supreme Court of Michigan has held that she lacks such authority." *Id.* For these reasons, we concluded that the appeal was moot and declined to address the merits of the preliminary injunction request.

We have since reaffirmed that holding. Once in *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395 (6th Cir. Jan. 19, 2022), and again in *Midwest Institute of Health, PLLC v. Whitmer*,

Nos. 21-1611/1650, 2022 WL 304954 (6th Cir. Feb. 2, 2022). In *Thompson*, a group of Michigan residents challenged dozens of executive orders that closed in-state businesses and directed residents to stay home. Although the residents may have alleged an injury at the start of the litigation, we found that the governor's decision to rescind the executive orders eliminated the injury. *Id.* at *4. We acknowledged that "whether the governor's voluntary decision to rescind the order *by itself* sufficed to prove that she was not reasonably likely to reissue a similar order might have raised a difficult mootness question." *Id.* (emphasis in original). However, citing *League of Independent Fitness Facilities*, we determined that the Michigan Supreme Court's decision which found that "the governor lacked authority to issue any of the executive orders under Michigan law [made] it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotations omitted). We accordingly held that "the combined effect of the governor's decision rescinding the executive orders and the Michigan Supreme Court's decision finding them invalid" rendered the case moot without exception. *Id.*

Similarly, in *Midwest Institute of Health*, a group of healthcare providers challenged executive orders postponing non-essential medical care. We found that the plaintiffs sought "a declaratory judgment with respect to specific orders, orders the Governor and Director [of the Michigan Department of Health] withdrew after the Michigan Supreme Court ruled," and therefore, the complaint no longer presented live issues. *Midwest Inst. of Health*, 2022 WL 304954, at *2. We further determined, "Any suggestion that the Governor might reenact materially identical orders withers under the light of the Michigan Supreme Court's ruling that she may not." *Id.* We likewise concluded that the declaratory judgment counts were moot without exception. *Id.*

We most recently visited the issues in *Resurrection School v. Hertel*, 35 F.4th 524 (6th Cir. 2022) (en banc). There, a private religious elementary school challenged executive orders

requiring masks in public settings. Although the state later rescinded the mask mandate, the school argued that two exceptions applied to evade the mootness doctrine—voluntary cessation and capable of repetition yet evading review. *Id.* at 528. With respect to voluntary cessation, we expounded upon our previous holdings and found that three circumstances hindered any reasonable possibility of the challenged conduct reoccurring: (1) the relevant circumstances had dramatically changed since the imposition of the statewide mask mandate, including high vaccination rates, low case counts, new treatment options, and warmer weather; (2) the state rescinded the mandate in response to the changed circumstances of the pandemic, not in response to the lawsuit; and (3) the Supreme Court and other courts have since ruled on the constitutionality of a number of COVID-19 mandates and restrictions. *Id.* at 529. We further determined that the capable-of-repetition-yet-evading-review exception was inapposite for largely the same reasons, again citing the advancements made to combat COVID-19. *Id.* at 530. For those reasons, we held that the appeal was "palpably" moot. *Id.*

In a separate concurrence, Judge Moore identified three additional considerations for review: (1) the approval of a vaccine for school-aged children; (2) the refusal to impose new mandates during subsequent spikes in COVID-19 caused by the Delta and Omicron variants; and (3) the one-year lapse without a similar mask mandate. *Id.* at 530-31. With no viable prospect of the state reimposing a similar order, Judge Moore agreed that the appeal was moot.

These same considerations hold true here; the stay-at-home order has long been rescinded, and the plaintiffs have not set forth any likelihood of Whitmer reissuing it in a similar form. Therefore, we see no reason to depart from this line of cases, and the plaintiffs' claims are moot.

## III.

For these reasons, the district court's judgment is **AFFIRMED**.